IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

**ERIE INSURANCE PROPERTY
AND CASUALTY COMPANY,**

    **Plaintiff,**

v.           **CIVIL ACTION NO.:  2:20-CV-00321**
                  The Honorable Irene C. Berger, Judge

**JAMES SKYLAR COOPER,**

    **Defendant and Counterclaimant.**


MEMORANDUM OF LAW IN SUPPORT OF
ERIE INSURANCE PROPERTY AND CASUALTY
<u>COMPANY'S MOTION FOR SUMMARY JUDGMENT</u>

  **NOW COMES** the Petitioner, Erie Insurance Property & Casualty Company, (hereinafter "Erie"), by and through counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, respectfully moves this Court for an Order granting it summary judgment on the basis that there are no material issues of fact in dispute and Erie is entitled to judgment as a matter of law.

*Introduction*

  The present case involves a declaratory judgment action which seeks a declaration from this Court as to whether the Respondent, James Skylar Cooper ("Cooper") is entitled to underinsured motorist coverage under a policy of insurance issued to his employer, Pison Management, LLC ("Pison Management").  Cooper's claim for underinsured motorist coverage arises from a motor vehicle accident that occurred on August 9, 2019.  At the time of the accident, Cooper was traveling in a vehicle owned by a third party, Rick Huffman ("Huffman"), which was

1

not insured for underinsured motorist coverage under the Erie Policy issued to Pison Management. Based on that fact, Cooper has asserted that he is entitled to underinsured motorist coverage because he was "using" a vehicle that he was not occupying at the time of the motor vehicle accident. In other words, Cooper asserts that this Court should find that he was "using" the vehicle that was traveling in front of the vehicle he was occupying at the time of the accident.

The issue before the Court is whether, under West Virginia law, Cooper can "use" a vehicle insured by Pison Management when he is in fact traveling in a different vehicle, owned and operated by Huffman, that is not insured for underinsured motorists coverage under the insurance policy issued to Pison Management. As West Virginia law makes clear, in order for there to be underinsured motorist coverage available to Cooper under the Erie Policy at issue, this Court would have to greatly expand West Virginia's motor vehicle "use" doctrine. The facts are not in dispute on this issue, and Erie is entitled to judgment as a matter of law.

### *Factual Background*

The claims in this matter arise out of a motor vehicle accident that occurred in Kanawha County, West Virginia on or about August 9, 2019. *Exhibit 1*, page 1. At the time of the incident at issue, Huffman was operating a 2007 Dodge Caliber that he owned. *Exhibit 1*, pages 12 – 14. Respondent Cooper was a passenger in the Huffman vehicle as the vehicle was traveling north on Sissonville Drive. *Exhibit 1*, page 16. The Huffman vehicle was traveling behind a 2004 Chevrolet Silverado owned by Pison Management and operated by Demetrius Elder. *Exhibit 1*, pages 8 – 10. The motor vehicle accident occurred when a third vehicle, owned and operated by Thelma White, was traveling south on Sissonville Drive and crossed center, striking a trailer attached to the Chevrolet Silverado and then striking the Huffman vehicle head-on. *Exhibit 1*, page 2.

At the time of the motor vehicle accident, both Huffman and Cooper were employees of Pison Management. *Exhibit 2*, page 13, lines 2 – 22. Concerning the events leading up to the motor vehicle accident, Cooper testified that, on the morning of the accident, he was picked up by Huffman in Huffman's personal vehicle and the two traveled to a job location in Cross Lanes, West Virginia where they were to meet other employees and get grass-cutting equipment they needed for the job that day. *Exhibit 2*, page 21, lines 3 - 11. Once Huffman and Cooper arrived at the Cross Lanes location, they assisted in attaching a trailer to the Chevrolet Silverado and loaded the trailer with the lawn cutting equipment they needed. *Exhibit 2*, page 21, lines 12 – 20. Once the trailer was attached and loaded, Huffman and Cooper walked back to Huffman's vehicle and waited for the other employees to leave for the job site. *Id.* After waiting for about ten minutes, the three vehicles left together to head towards the job site. *Exhibit* 2, page 23, lines 17 – 24, page 24, lines 1 – 16. When the group left for the job site, Huffman and Cooper were riding in Huffman's personal vehicle and were following two other vehicles. The first vehicle in the convoy had two employees in a 2018 Dodge Ram. *Id.* The second vehicle in line was the 2004 Chevrolet Silverado operated by Demetrius Elder. *Id.* The Huffman vehicle, occupied by Huffman and Cooper, was the third vehicle in line. *Id.* The motor vehicle accident at issue in this case occurred when the three vehicles were in route to that job site.

At the time of the August 9, 2019 motor vehicle accident, Pison Management was insured by a Commercial Auto Insurance Policy issed by Erie, Policy No. Q02 5830178, with a policy period of February 8, 2019 to February 8, 2020 (hereinafter the "Erie Policy"). *Exhibit 3*. The named insured identified on the Erie Policy is "Pison Management LLC". *Exhibit 3*, Declarations. As a result of the motor vehicle accident, Cooper made a claim for underinsured motorist coverage by way of a letter dated February 6, 2020. (Document 1-2). By letter dated April 28, 2020, Erie

advised Cooper that its investigation concluded that the Erie Policy did not provide underinsured motorist coverage to Cooper. (Document 1-5).

Erie filed the instant Declaratory Judgment action on or about May 7, 2020 pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201, seeking a declaration concerning the rights and responsibilities of the parties relative to the contract of insurance issued to Pison Management LLC under which Respondent, James Skylar Cooper seeks first-party underinsured motorist coverage. Erie asserts that there is no underinsured motorist coverage available for Respondent Cooper under the Erie Policy at issue on several grounds: he is not a named insured under the Erie Policy; the vehicle he was traveling in at the time of the motor vehicle accident is a Non-Owned Auto and the Erie Policy does not provide underinsured motorist coverage for Non-Owned Autos, and Respondent Cooper was not "using" a listed vehicle insured under the Erie Policy at the time of the accident. *See Petition for Declaratory Judgment* [Doc. No. 1].

In an apparent recognition that underinsured motorist coverage is not extended to the Huffman vehicle as a Non-Owned Auto, Cooper has instead asserted the novel argument that he was "using" a Pison Management vehicle at the time of the motor vehicle accident, despite the fact that he was traveling in a vehicle that was not owned by Pison Management and was not a listed vehicle on the Erie Policy. Specifically, in response to the Petition seeking a declaration of no coverage, Respondent Cooper asserts that he was "using" the 2004 Chevy Silverado insured under the Erie Policy at the time of the incident, even though he was following that vehicle while riding as a passenger in a separate vehicle. *See Answer to Petition & Counterclaim* [Docket No. 6] at p. 12. As set forth herein, the facts are not in dispute and the Erie Policy clearly does not extend underinsured motorist coverage to Cooper and West Virginia law does not extend the "use"

doctrine to Cooper when he was traveling in a vehicle that was not owned by Pison Management and not insured for underinsured motorist coverage under the Erie Policy.

### *Legal Authority*

Rule 56 of the Federal Rules of Civil Procedure provides, in pertinent part, as follows:

> **(a) Motion for Summary Judgment or Partial Summary Judgment.** A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed R. Civ. P. 56(a).  "The court will grant summary judgment only where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law and the party opposing a motion for summary judgment is entitled to all favorable inferences which can be drawn from the evidence." *See Kinney v. Daniels*, 574 F. Supp. 542 (S. D. W.Va. 1983).  A party seeking summary judgment has the burden of establishing that there is no genuine issue of fact and that the party is entitled to judgment as a matter of law.  See *United States v. Ball*, 326 F.2d 898 (4th Cir. 1964).

In this case, the parties seek a declaratory judgment from this Court regarding potential underinsured motorist insurance coverage in effect and applicable for Respondent Cooper related to a motor vehicle accident that occurred on August 9, 2019 in Kanawha County, West Virginia. As the dispute between the parties deals solely with the interpretation of the insurance policy and the coverage available, a declaratory judgment is appropriate.  *See United States Insurance Co. v. Kapiloff*, 155 F.3d 488 (4th Cir. 1998) ("a declaratory judgment action would undoubtedly 'serve a useful purpose' in settling the disputed rights of [the insurer] and the [insureds] under the insurance policy, and a declaratory judgment would 'afford relief' from the uncertainty of whether coverage exists under the policy.") .

For purposes of application of law, "[i] a declaratory judgment action where jurisdiction is based on diversity of citizenship, interpretation of the insurance policy at issue is governed by West Virginia law." *See First Fin. Ins. Co. v. Crossroads Lounge,* 140 F. Supp. 2d 686, 694 (S.D. W. Va. 2001). Further, "determination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law." *See* Syllabus Point 1, *Tennant v. Smallwood*, 211 W.Va. 703, 568 S.E.2d 10 (2002). In this case, disposition through summary judgment is appropriate as the factual circumstances surrounding the claim are not in dispute and the interpretation of the insurance contract is a question of law.

*Argument*

**1. The Huffman Vehicle Is A Non-Owned Auto And The Erie Policy Does Not Extend Underinsured Motorist Coverage To Non-Owned Autos**

The Erie Policy identifies two listed vehicles on the Declarations, the 2004 Chevrolet Silverado and a 2019 Ram pickup truck.[1] *Id.* The 2007 Dodge Caliber owned by Huffman in which Cooper was riding at the time of the accident, is not a listed vehicle on the Declarations of the Erie Policy. *Id.*

The Declarations of the Erie Policy identifies four categories of autos that are covered under the terms of the Erie Policy. *Id.* These categories include the 2004 Chevrolet Silverado (Auto 10), Hired Autos (Auto 11), Non-Owned Autos (Auto 12) and the 2019 Ram pickup truck (Auto 13). *Id.* The Declarations also then lists the various coverages provided for each Auto in Item 5, which states, "**INSURANCE IS PROVIDED WHERE A PREMIUM, OR INCL, IS SHOWN FOR THE COVERAGE.**" *Id.*

---

[1] Upon information and belief, the 2019 Ram pickup truck was the first vehicle in the three-vehicle convoy at the time of the motor vehicle accident.

Since the Huffman vehicle is not a listed vehicle on the Erie Policy, any coverage available to the Huffman vehicle is limited to coverage provided by the Hired Auto (Auto 11) or Non-Owned Auto (Auto 12) classifications. The Erie Policy provides the following definitions of Hired Autos and Non-Owned Autos:

> **AUTOS WE INSURE**
>
> The **Declarations** shows which of the following are **autos we insure** under this policy:
>
> 2.  **Hired Autos**. These are **autos you**, or **your** employee while on **your** business, hire, rent, or borrow for use in **your** business, but only for coverages for which a premium charge is shown. They cannot be owned by **your** employees or partners, or members of their households.
>
> 3.  **Non-Owned Autos** (Employer's Non-Ownership Liability). These are **autos you** do not own, hire, rent or borrow that are used in **your** business, but only for coverages for which a premium charge is shown. This includes **autos** owned by **your** partners, employees or members of their households, but only while used in **your** business.

*Exhibit 3,* p. 5.

The Huffman vehicle does not qualify as a Hired Auto, because autos owned by employees are excluded from the definition of Hired Autos, and Huffman was an employee of Pison Management. Accordingly, the Huffman vehicle qualifies as a Non-Owned Auto, which does include autos owned by employees. Accordingly, any coverage for the Huffman vehicle under the Erie Policy is limited to coverage that is provided to Non-Owned Autos.

Item 5 of the Declarations specifies the coverages provided for each classification of Autos under the Erie Policy. *Exhibit* 3*,* Declarations*.* Per the terms of the Declarations and the definition of Non-Owned Autos, the coverage provided is limited "to coverages for which a premium charge is shown." *Id.*; *see also Exhibit 3*, page 5. With respect to Non-Owned Autos, the Declarations of

the Erie Policy only provides liability coverage, as that is the only type of coverage for which there is a premium charge. *Id.* No premium charge is listed for underinsured motorist coverage with respect to Non-Owned Autos, so that coverage is not provided with respect to the Huffman vehicle.

> **2. Huffman Is Not Anyone We Protect For Purposes Of Underinsured Motorist Coverage Under The Erie Policy**

The only premium charges associated with underinsured motorist coverage are for the two listed vehicles on the Declarations, the 2004 Chevrolet Silverado (Auto 10) and the 2019 Ram pickup truck (Auto 13). *Exhibit 3*, Declarations. With respect to those two vehicles, the Erie Policy provides underinsured motorist coverage in the amount of $1,000,000 per accident. *Id.* Underinsured/Underinsured Motorists Coverage is provided by way of endorsement to the Erie Policy. The insuring provisions for that coverage provides as follows:

> **UNINSURED/UNDERINSURED MOTORISTS COVERAGE ENDORSEMENT – WEST VIRGINIA**
>
> **OUR PROMISE**
>
> **We** will pay damages for bodily injury and property damage that **you** or **your** legal representative are legally entitled to recover from the owner or operator of an **uninsured motor vehicle**. If Underinsured Motorists Coverage is indicated on the **Declarations**, **we** will pay damages for bodily injury and property damage that **you** or **your** legal representative are legally entitled to recover from the owner or operator of an **underinsured motor vehicle**.
>
> Damages must result from a motor vehicle accident arising out of the ownership or use of the **uninsured motor vehicle** or **underinsured motor vehicle** as a motor vehicle and involve:
>
> 1. Bodily injury to **you** or others **we** protect. Bodily injury means physical harm, sickness, disease or resultant death to a person; or
>
> 2. Property damage, meaning destruction of or injury to:
>
>    a. An **owned auto we insure** and property owned by **anyone we protect** while contained in such **auto;**

  b. Property owned by **you** or a **relative** while contained in any **auto we insure** under this coverage; and

  c. Any other property (except a **motor vehicle**) owned by **anyone we protect** and located in West Virginia.

  If loss results in an Uninsured or Underinsured Motorists Property Damage claim, **we** will pay **you** the greater of the fair market rental value of a like kind replacement vehicle or the amount to which **you** are entitled under Transportation Expenses Coverage, if purchased.

 **We** will not be bound by a judgment against the owner or operator of the **uninsured motor vehicle** or **underinsured motor vehicle** on issues of liability or amount of damages unless it is obtained with **our** written consent.

*Exhibit 3*, Uninsured/Underinsured Motorists Coverage Endorsement – West Virginia, p. 1.

For bodily injury, the insuring provisions for Uninsured/Underinsured Motorists Coverage is limited to "you" and "others we protect". "You" is defined by the Erie Policy as follows:

### ADDITIONAL ERIE INSURANCE COMPANY AND ERIE INSURANCE PROPERTY AND CASUALTY COMPANY DEFINITIONS

**"you", "your"** and **"Named Insured"** means the person(s) or organization(s) named in Item 1 on the **Declarations.** Except in the **RIGHTS AND DUTIES – GENERAL POLICY CONDITIONS** Section, these words include **your** spouse if a resident of the same household.

*Exhibit 3*, Declarations, Item 1. The Erie Policy lists Pison Management, LLC as the Named Insured. *Id.* Cooper is not a Named Insured and does not qualify as "you" under the Erie Policy.

Uninsured/Underinsured Motorists Coverage is also extended to OTHERS WE PROTECT for purposes of bodily injury. Specifically, the UM/UIM endorsement provides:

**OTHERS WE PROTECT**

**We** also protect:

9

1. any **relative** if **you** are an individual.

2. anyone else, while **occupying** any **owned auto we insure** other than an **owned auto we insure** being used without the permission of the owner.

3. anyone else who is entitled to recover damages because of bodily injury to any person protected by this coverage.

4. if **you** are an individual, anyone else while **occupying a non-owned auto we insure** other than:

    a. one **you** are using that is owned or leased by another person residing in **your** household.

    b. one furnished or available for the regular use of **you** or anyone residing in **your** household.

    c. One being operated by anyone other than **you** or a **relative.**

*Exhibit 3*, Uninsured/Underinsured Motorists Coverage Endorsement – West Virginia, p. 2. Based on the terms of the Erie Policy, underinsured motorists coverage is only provided to others we protect while occupying non-owned autos when you, or the Named Insured, *is an individual*. Pison Management, LLC is not an individual, and, as such, underinsured motorists coverage is not extended to Non-Owned Autos under the Erie Policy. As shown below, based on the provisions of the Erie Policy, there is no coverage for Cooper for his claims of underinsured motorist coverage.

   **3. Respondent Cooper Was Not "Using" A Listed Vehicle At The Time Of The Accident**

The Erie Policy in this case clearly establishes that underinsured motorist coverage is only extended to auto classifications for which there is a premium charge for underinsured motorist coverage. The Erie Policy in this case also clearly establishes that premium for underinsured

motorist coverage was only charged for the two Pison Management vehicles that were specifically listed on the Declarations. In other words, underinsured motorist coverage is only provided when the injuries arise from the use of an Owned Auto. Recognizing this as his only avenue to recover underinsured motorist coverage, Cooper now asserts that he was "using" an Owned Auto, the 2004 Chevy Silverado, at the time of the motor vehicle accident, even though he was riding as a passenger in Huffman's 2007 Dodge Caliber. *See Answer to Petition & Counterclaim* [Docket No. 6] at p. 12. This position is unsupported by the language of the Erie Policy and caselaw concerning the "use" of an insured vehicle in West Virginia.

As noted above, Underinsured/Underinsured Motorists Coverage is provided by way of endorsement to the Erie Policy. The insuring provisions for that coverage extends coverage to the Named Insured and Others We Protect, as defined by the Policy. With respect to Owned Autos, the Erie Policy provides as follows in the endorsement for uninsured and underinsured motorist coverage:

> **OTHERS WE PROTECT**
>
> **We** also protect:
>
> * * *
>
> 2. anyone else, while **occupying** any **owned auto we insure** other than an **owned auto we insure** being used without the permission of the owner.

*Exhibit 3*, Uninsured/Underinsured Motorists Coverage Endorsement – West Virginia, p. 2.[2]

---

[2] Respondent Cooper is not a Named Insured under the Erie Policy. Therefore, in order for UIM coverage to be provided to him under the Erie Policy, he must fall under the "others we protect" provision of the Erie Policy.

While the Erie Policy uses the term "occupying" for purposes of this extension of coverage, Erie recognizes that under West Virginia law, the issue to be decided is whether Cooper was "using" the 2004 Chevrolet Silverado at the time of the motor vehicle accident. In *Adkins v. Meador*, 494 S.E.2d 915 (W.Va. 1997), the West Virginia Supreme Court held that an insurance policy providing coverage for persons "occupying" a certain vehicle must be read to provide coverage for persons "using" an insured vehicle as the term "occupying" is narrower than the language contained within West Virginia Code 33-6-31(c) (concerning uninsured and underinsured motorists coverage). *Id*. at Syl. Pt. 3. Regardless, it is still clear in this case that Cooper was not using the 2004 Chevrolet Silverado when the motor vehicle accident occurred.

In West Virginia, a body of law has developed with respect to the use of a vehicle when the claimant was outside of the vehicle at the time of the injury. In doing so, the West Virginia Supreme Court of Appeals recognized that there were instances where a person could be "using" a vehicle while not occupying it. However, in each of those instances, the individual was outside of the vehicle in question and was not occupying a different motor vehicle that was insured under a separate policy of insurance.[3]

In *Cleaver v. Big Arm Bar & Grill*, 502 S.E.2d 438 (W.Va. 1998), the West Virginia Supreme Court of Appeals had occasion to rule on whether a person not physically in a motor vehicle was "using" that vehicle for the purposes finding liability coverage in an auto policy. In *Cleaver*, a vehicle operated by Michel Hulbert, and in which the Plaintiff's decedent, Douglas Cleaver, was a passenger, struck Andrew Haba after Mr. Haba exited his parked vehicle and attempted to cross the street. Mr. Haba, a college freshman, had been drinking at the Big Arm Bar & Grill until 2:00 a.m. and then drove his vehicle to the Altos Club. After parking and leaving his

---

[3] The Huffman vehicle that Cooper was riding in at the time of the motor vehicle accident was insured under a separate personal policy of insurance issued to Huffman by West Virginia National Auto. *Exhibit 2*, page 12.

12

vehicle and sprinting diagonally across the street, Mr. Haba was struck in the second lane by the Hulbert vehicle in which Mr. Cleaver was the front passenger. *Id*.

Both Mr. Haba and Mr. Cleaver died in the incident. The issue in *Cleaver* was whether or not Haba was "using" his vehicle, for the purposes of automobile liability insurance coverage, at the time of the incident at issue. The lower court ruled that Haba was not "using" his vehicle at the time of the accident, therefore there was no coverage under the vehicle's policy, and the Plaintiff appealed. On appeal, the West Virginia Supreme Court upheld the lower court's ruling. In so ruling, the *Cleaver* Court articulated a four-part test to determine if a motor vehicle was being "used" at the time of an incident:

> 2. When the "use" of a vehicle is in question for insurance purposes due to the separation of an individual from a vehicle at the time of an accident, the court must determine whether there is a causal connection between the motor vehicle and the injury. In making that determination, the court may consider, but is not limited by, the following factors: a) whether the individual was in reasonably close proximity to the insured vehicle at the time of the accident; b) whether the individual was vehicle oriented as opposed to highway or sidewalk oriented; c) whether the individual had relinquished control of the vehicle; and d) whether the individual was engaged in a transaction reasonably related to the use of the vehicle at the time of the accident.

*Cleaver,* 502 S.E.2d at Syl. Pt. 2. The *Cleaver* Court, in upholding the lower court's ruling that the Haba vehicle was not being "used" at the time of the incident, noted that there was no nexus between the use of the vehicle and the accident, Mr. Haba had relinquished control of the vehicle at issue at the time of the incident as he was parked and had left the vehicle, that he was highway-oriented rather than vehicle-oriented at the time of the incident in that he was crossing the street, and that he was not engaged in a transaction essential to the vehicle's use at the time that he was struck. *Id*. at p. 442-443.

Further, in *Keefer v. Ferrell*, 655 S.E.2d 94 (W.Va. 2007) (per curium), the West Virginia Supreme Court provided more insight on the four-factor test articulated for "use" in *Cleaver*. In

13

*Keefer*, the Supreme Court upheld the lower court's ruling that the Plaintiff was "using" his motor vehicle at the time of a motor vehicle incident when a tractor he was operating in order to load it onto a trailer attached to his vehicle was stuck by another vehicle. *Id*. In upholding the lower court's ruling, the *Keefer* Court noted as follows:

> we have explained that the 'use' of a motor vehicle entails both a causal connection and a foreseeability component. In other words, under *W. Va.Code,* 33–6–31(c) [1995], insurers must provide uninsured motorist coverage, and make available underinsured motorist coverage, for injuries causally connected to the use of the vehicle, and foreseeably identifiable with the normal use of the vehicle.

*Keefer*, 655 S.E.2d at 101 (internal citations omitted). The *Keefer* Court analyzed the four (4) factors under *Cleaver* and held that the injuries sustained by Plaintiff Keefer were causally connected to the use of the truck because the tractor was in the process of being loaded onto the trailer, and was thus oriented toward the insured vehicle. *Id*. The Court also noted that it was foreseeable that the tractor would be loaded onto the truck and that injuries might occur during that process. *Id*. On this point, the Court focused on the fact that the truck at issue was a farm truck, that the policy recognized that the truck was being put to farm use, and that it was foreseeable that there would be occasions where farm equipment would be loaded onto the farm truck. *Id*.

In the instant case, the undisputed facts reveal that Respondent Cooper was not "using" the 2004 Chevrolet Silverado at the time of the motor vehicle accident. First, with respect to the first *Cleaver* factor, whether Cooper was in reasonably close proximity to the insured vehicle at the time of the accident, the undisputed facts in this case establish that he was riding in a separate vehicle at the time. He was not in close proximity to the 2004 Chevrolet Silverado, he was not in the process of entering or exiting the 2004 Chevrolet Silverado, and he was not in the process of loading or unloading items from the 2004 Chevrolet Silverado. While the evidence in this case would suggest that Cooper was using the 2004 Chevrolet Silverado when he loaded lawn-cutting

equipment onto the trailer attached to the Silverado earlier that morning, that use had ended once the loading was completed and Cooper left the Silverado to use a separate vehicle for purposes of traveling to the job site.

With respect to the second *Cleaver* factor, whether Cooper was vehicle oriented as opposed to highway or sidewalk oriented, the focus in *Cleaver* makes clear that the analysis is whether the individual has departed the vehicle or is in the process of entering the vehicle. In *Cleaver*, the Court found that Haba was not vehicle oriented but highway oriented because he was departing from the vehicle. In this case, Cooper was neither departing from or preparing to enter the vehicle. He was occupying a totally separate vehicle – his orientation was seated in a totally different vehicle with no intent to make contact with the 2004 Chevrolet Silverado until the three-vehicle convoy reached the job site.

With respect to the third *Cleaver* factor, whether Cooper had relinquished control of the vehicle, the evidence in this case clearly establishes that he had no control over the 2004 Chevrolet Silverado. Again, while Cooper may have been using the 2004 Chevrolet Silverado during the period of time that he was loading lawn-cutting equipment into the truck before departing, once Cooper completed that task and got into the Huffman vehicle to travel to the job site, any control of the Silverado had been relinquished, and simply traveling to the jobsite behind the Silverado does not constitute the requisite control under this factor.

With respect to the final *Cleaver* factor, whether Cooper was engaged in a transaction reasonably related to the use of the vehicle at the time of the accident, the evidence likewise establishes that Cooper was not engaged in any interaction with the 2004 Chevrolet Silverado at the time of the motor vehicle accident. Simply following another vehicle does not constitute the engagement in a transaction with the vehicle traveling in front of you. While the loading of the

15

lawn-cutting equipment earlier in the day may constitute a transaction reasonably related to the use of the vehicle, that transaction was clearly concluded when Cooper left the Silverado and traveled with Huffman to the job site in a separate vehicle. To that end, the *Cleaver* factor incorporates a temporal component in the analysis which is simply not present in the current case.

What West Virginia case law makes clear is that the *Cleaver* factors are assessments that are made to see if the injuries at issue are causally connected to a specific vehicle and whether it is foreseeable that the injuries arose from that vehicle. In the present case, the evidence establishes no causal connection between Cooper's injuries and the 2003 Chevrolet Silverado. The injuries to Cooper occurred because a vehicle operated by Thelma White crossed center and struck the Huffman vehicle. Those injuries did not occur through the foreseeable use of the 2004 Chevrolet Silverado that was traveling in front of the Huffman vehicle.

### *Conclusion*

Respondent Cooper takes the untenable position in this matter that he was "using" the 2004 Chevrolet Silverado while he was a passenger in another vehicle owned by a third party. The facts in this case demonstrate that Cooper was using the Huffman vehicle at the time of the accident. To extend "use" of a vehicle to include the ability to use one vehicle while simultaneously using a separate vehicle when those vehicles are simply traveling on the highway to the same location would obliterate the common understanding of the term "use" in the context of insurance coverage. The *Cleaver* and *Keefer* cases extended the "use" doctrine to cases where individuals were outside of vehicles that had been occupied or were in the process of being occupied. These cases did not extend the "use" doctrine to cases where an individual can claim use despite the fact that the individual is clearly using a separate vehicle. The Respondent's position is wholly contrary to the

purpose and intent of these cases. For those reasons, summary judgment should be granted in Erie's favor in this matter.

**WHEREFORE**, for the reasons set forth herein and in its accompanying Motion for Summary Judgment, Erie respectfully requests that this Honorable Court grant Summary Judgment in its favor and declare as follows:

A. That, based on the language of the Erie Policy, underinsured motorists coverage is not provided for non-owned autos.

B. That, based on the language of the Erie Policy, Cooper does not qualify as "you" or "others we protect" for purposes of underinsured motorists coverage.

C. That based on the language of the Erie Policy, Cooper was not "using" a vehicle insured for underinsured motorist coverage under the Erie Policy issued to Pison Management at the time of the August 9, 2019 motor vehicle accident;

D. That based on the language of the Erie Policy, Cooper is not entitled to underinsured motorists coverage under the Erie Policy issued to Pison Management.

E. Erie Insurance Property & Casualty Company also requests any such other and further relief as this Court deems just and appropriate.

                      **ERIE INSURANCE PROPERTY**
                      **& CASUALTY COMPANY**

                      **By Counsel**

       /s/ Matthew J. Perry
Matthew J. Perry, Esquire, WVSB #8589
James D. Lamp, Esquire, WVSB #2133
J. Jarrod Jordan, Esquire WVSB 10622
Lamp Bartram Levy Trautwein & Perry, PLLC
720 Fourth Avenue
P. O. Box 2488
Huntington, WV  25725-2488
(304) 523-5400
*Counsel for Erie Insurance Property*
*& Casualty Company*

**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON**

**ERIE INSURANCE PROPERTY
AND CASUALTY COMPANY,**

      **Plaintiff,**

v.                                               **CIVIL ACTION NO.: 2:20-CV-00321**
                                                  **The Honorable Irene C. Berger, Judge**

**JAMES SKYLAR COOPER,**

      **Defendant and Counterclaimant.**

**CERTIFICATE OF SERVICE**

      I, MATTHEW J. PERRY, counsel for Erie Insurance Property & Casualty Company, do hereby certify that service of the foregoing "**MEMORANDUM OF LAW IN SUPPORT OF ERIE INSURANCE PROPERTY AND CASUALTY COMPANY'S MOTION FOR SUMMARY JUDGMENT**" has been made upon counsel of record via the Court's CM/ECF system on this the 2nd day of November, 2020, addressed as follows:

                                      Robert A. Campbell
                                      R. Chad Duffield
                                      Jennifer D. Roush
                                      FARMER CLINE & CAMPBELL, PLLC
                                      Post Office Box 3842
                                      Charleston, WV 25338

       /s/ Matthew J. Perry
Matthew J. Perry, Esquire, WVSB #8589
James D. Lamp, Esquire, WVSB #2133
J. Jarrod Jordan, Esquire WVSB #10622
Lamp Bartram Levy Trautwein & Perry, PLLC
740 Fourth Avenue
P. O. Box 2488
Huntington, WV  25725-2488
(304) 523-5400
mperry@720legal.com
jlamp@720legal.com
*Counsel for Erie Insurance Property and Casualty Company*