IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

**ERIE INSURANCE PROPERTY
& CASUALTY COMPANY,**

  **Plaintiff,**

v.               **CIVIL ACTION NO.: 2:20-cv-00321
                 HONORABLE IRENE C. BERGER**

**JAMES SKYLAR COOPER,**

  **Defendant and Counterclaimant.**

## JAMES SKYLAR COOPER'S RESPONSE TO ERIE PROPERTY AND CASUALTY COMPANY'S MOTION FOR SUMMARY JUDGMENT

  Now comes the Defendant and Counterclaimant, James Skylar Cooper, in response to *Erie Insurance Property and Casualty Company's Motion for Summary Judgment* ("Erie's Motion"), ECF 14, and requests that the Court deny Erie's Motion based on the facts and law set forth below, and as set forth in the *Memorandum of Law in Support of James Skylar's Cooper's Motion for Summary Judgment on Counterclaim for Declaratory Relief* ("Mr. Cooper's Motion"), ECF 17, which Mr. Cooper incorporates by reference, pursuant to Rule 10(c) of the *Federal Rules of Civil Procedure*.

## FACTUAL BACKGROUND

  The facts set forth in Erie's Motion and supporting memorandum of law and in Mr. Cooper's Motion indicate that the parties agree on the relevant facts, including the following:

  (1) Mr. Cooper was a Pison Management, LLC ("Pison") employee whose primary job responsibility was to mow the grass at Pison managed rental properties. *Cooper*, 6, Ex. 1, Memorandum of Law in Support of *Erie Insurance Property and Casualty Company's Motion for Summary Judgment* ("Erie's Memo"), ECF 15, p. 3;

(2) While traveling to a job site on August 9, 2019, Mr. Cooper was involved in a head-on collision, which caused him to suffer serious injuries. *Counterclaim*, ECF 6, *Cooper*, 34, Ex. 1, *Crash Report*, Ex. 2, and Erie's Memo, ECF 15, p. 2;

(3) Prior to the collision, and like most every other work day, Mr. Cooper arrived at Pison's Cross Lanes location where he retrieved grass cutting equipment from storage and loaded the equipment onto an utility trailer to transport the equipment to a job site. *Cooper*, 8-9, 21-22, 34 Ex. 1, and Erie's Memo, ECF 15, p. 3;

(4) When the equipment was loaded, Mr. Cooper and another co-worker, Mr. Huffman, got into Mr. Huffman's personal vehicle to travel to the job site. *Cooper*, 24, Ex. 1, Erie's Memo, ECF 15, p. 3;

(5) As they had not previously been to this job site, Mr. Huffman and Mr. Cooper proceeded to follow directly behind a 2004 Chevrolet truck that was towing the utility trailer and equipment. *Cooper*, 10, 20, 24, 28, 33, Ex. 1, Erie's Memo, ECF 15, p. 3; and

(6) The 2004 Chevrolet was owned by Pison and insured by Erie through a commercial auto policy ("Erie Policy"). *Cooper*, 15, Ex. 1, Erie's Memo, ECF 15, p. 3.

The parties also agree that the Erie Policy identifies the 2004 Chevrolet as an "owned auto" and provides underinsured motorist coverage ("UIM coverage") of $1 million for owned autos. Erie's Memo, ECF 15, pp. 6-8. Erie also agrees that while its policy attempts to limit UIM coverage to situations where a person is "occupying" a vehicle, West Virginia law requires Erie to provide UIM coverage for "use" of a vehicle, which is broader than "occupancy." Erie's Memo, ECF 15, p. 12.[1]

---

[1] Attempting to limit UIM coverage to "occupancy" is contrary to *West Virginia Code* §33-6-31(c), which requires UIM coverage be provided to anyone who "uses" the motor vehicle. In fact, West Virginia law has long held that restricting coverage to "occupancy" is too limited and policies must be interpreted as providing coverage for "use" and not just "occupancy." *See* Syl. pt. 2, *Universal Underwriters Ins. Co. v. Taylor*, 185 W.Va. 606, 408 S.E.2d 358 (W.Va., 1991) (provisions in an insurance policy that are more restrictive than statutory requirements are void and ineffective as against public policy) and *Adkins v. Meador*, 201 W.Va. 148, 494 S.E.2d 915 (W.Va., 1997) (finding that policy language like Erie's, which limits coverage to occupancy, was void).

Thus, the disagreement between the parties can be reduced to the following issues:

    (1)    Whether or not Mr. Cooper was *using* the 2004 Chevrolet at the time of the collision;

    (2)    Whether or not the Erie Policy provides UIM protection to Mr. Cooper where the named insured under the policy is not an individual; and

    (3)    Whether or not Erie must provide UIM coverage for Mr. Cooper as an occupant of a non-owned vehicle for failing to make a commercially reasonable offer of UIM coverage for non-owned vehicles.

As demonstrated below, Mr. Cooper is entitled to UIM coverage for both his use of an owned auto – the 2004 Chevrolet – and for his occupancy and use of a non-owned auto – Mr. Huffman's vehicle.

## LEGAL ARGUMENT

### I. THE FACT THAT MR. COOPER WAS NOT OPERATING, CONTROLLING, OR EVEN OCCUPYING THE 2004 CHEVROLET IS NOT DETERMINATIVE AS TO WHETHER HE WAS USING THE VEHICLE.

The term "use" is widely recognized to mean more than driving, or being driven in a motor vehicle. *Adkins v. Meador*, 201 W.Va. 148, 494 S.E.2d. 915 (W.Va., 1997) (the term "use" implies employing the vehicle for some purpose or object, but depends upon the factual context of each case). Thus, the fact that Mr. Cooper was not operating, controlling, or even occupying the 2004 Chevrolet does not mean he was not using the vehicle for coverage purposes. As noted by the Supreme Court of Appeals in *Adkins:*

> police cruisers not only transport police officers, but they are used for protection, communication, traffic control, or as a mobile office; **fire trucks not only transport firemen, they carry equipment to put out fires; ambulances not only haul paramedics, but carry patients and the equipment used to save their lives**; garbage trucks not only transport sanitation workers, but they are used by the workers to collect, haul and dump garbage; tractor-trailers not only haul their drivers, but are used to deliver goods; and school buses carry young children to and from school in addition to carrying the county employees that drive the buses.

3

*Adkins*, 201 W.Va. at 154-155, 494 S.E.2d at 921-922. (footnotes removed, emphasis added).[2] As recognized by the Supreme Court of Appeals, a vehicle can be used to transport tools and equipment, which is one of the ways in which Mr. Cooper was using the 2004 Chevrolet at the time of the collision. *Id.* Mr. Cooper was also using the vehicle to navigate to a job site to which he was unfamiliar. *Cooper*, 20, Ex. 1

A year after the *Adkins* decision, the Supreme Court of Appeals of West Virginia further emphasized that a person can be "using" a vehicle, even when the person is separated from the vehicle at the time of the accident. *See* Syl. Pt. 2, in part, *Cleaver v. Big Arm Bar & Grill, Inc.*, 202 W.Va. 122, 127, 502 S.E.2d 438, 443 (W.Va.1998). For situations where the person is separated from the vehicle, the Supreme Court instructs courts to consider the *Cleaver* factors[3] as instructive guides in determining whether there is a causal connection between the insured vehicle and the injury. *Id.* Further, no one factor carries more weight than the others. *Cleaver,* at 202 W.Va. at 443, 202 W.Va. at 127.

Not only can an injured party be using a vehicle when separated from it, the fact that another person is actually driving or in control of the insured vehicle is also not determinative of whether another person is using the vehicle. In 2007, the Supreme Court of Appeals of West Virginia decided the *Keefer* case. *Keefer v. Ferrell.* 221 W.Va. 348, 655 S.E.2d 94 (W.Va. 2007)(per curium). In that case, Mr. Keefer was operating a farm tractor

---

[2] The Court in *Adkins* cited to an Iowa case in which the Supreme Court found that an employee was using a work vehicle, even though he may have been twenty feet away, noting that the truck was the employees "toolbox on wheels". *See Adkins*, 201 W.Va. at 156, 494 S.E.2d at 923 (*citing United Stated Fidelity & Guaranty Co.*, 562 N.W.2d 627 (Iowa, 1997)).

[3] The Court recognized that the four factors are based on the criteria used by a Court of Appeals in Washington, as announced in *Rau v. Liberty Mutual Insurance Co.*, 21 Wash. App. 326, 585 P.2d 157 (Wash. App., 1978).

on a public roadway when he was struck from behind. *Keefer*, 221 W.Va. at 351, 655 S.E.2d at 97. Mr. Keefer was on his way to a private driveway where he was planning to load the tractor onto a trailer being towed by a truck (the insured vehicle) which was parked and under the control of another person. *Id.*, 221 W.Va. at 354, 655 S.E.2d at 100. At the time of the collision, the tractor had not reached the truck and trailer but was twenty-five to thirty feet away. *Id.* Under these circumstances, the Court found:

> (1) the tractor was in reasonably close proximity to the truck;
>
> (2) the tractor was orientated toward the truck at the time;
>
> (3) the relinquishment of control factor was not applicable as the intended use of the truck to haul the tractor did not require him to operate the truck; and
>
> (4) Mr. Keefer was engaged in a transaction reasonably related to the use of the vehicle.

*Id.* 221 W.Va. at 355-356, 655 S.E.2d at 101-102.

Based on Supreme Court of Appeals of West Virginia precedent, the fact that Mr. Cooper was in a vehicle immediately behind the insured vehicle and not operating or in control of the 2004 Chevrolet is not determinative of his use. The ultimate determination of whether or not Mr. Cooper was using the 2004 Chevrolet depends on the *Cleaver* factors, which, as demonstrated below, all support a finding of use.

## II. THE *CLEAVER* FACTORS DEMONSTRATE THAT MR. COOPER WAS USING THE 2004 CHEVROLET

### A. Proximity

At the time of the collision, Mr. Cooper was following "close" behind the 2004 Chevrolet and trailer. *Cooper*, p. 28, Ex. 1. There were no vehicles in between the two

5

vehicles.[4] *Id.*, Ex. 1. Given that the Supreme Court of Appeals of West Virginia and other courts have considered twenty-five to thirty feet "reasonably close," it is clear that the proximity factor favors a finding that Mr. Cooper was using the 2004 Chevrolet as he was obviously within a similar distance, following closely behind the vehicle. *See Cooper*, 28, Ex. 1; *See also Keefer*, 221 W.Va. at 355, 655 S.E.2d at 101; *Great American Ins. Co. v. Cassell*, 239 Va. 421, 389 S.E.2d 476 (Va., 1990) (finding use where injured person was twenty to twenty-five feet away from insured vehicle); *Simpson v. United States Fidelity & Guar. Co.*, 562 N.W.2d 627, 631 (Iowa, 1997) (twenty feet was close proximity); *Oberkramer v. Reliance Ins. Co.*, 650 S.W.2d 300, 301 (Mo. App. E.D.,1983) (finding use when injured person was between 25 and 50 feet away from the vehicle); *Hartford Acc. Indem. Co. v. Booker*, 140 Ga.App. 3, 4, 7, 230 S.E.2d 70, 71, 73 (Ga. App., 1976) (injured party was thirty feet away from the insured vehicle).

Erie admits that Mr Cooper was "using" the 2004 Chevrolet when he loaded the lawn cutting equipment onto the trailer. Erie's Memo, ECF 15, pp. 14-15. Erie simply asserts that Mr. Cooper's use ended once the loading was complete. *Id.* However, Mr. Cooper was using the 2004 Chevrolet and attached trailer to transport the equipment and lead him to the job site – which was exactly what was occurring at the time of the crash. His use had not ended; the purpose for his use was not completed. Thus, for purposes of the proximity factor, Mr. Cooper was still using the 2004 Chevrolet at the time of the crash.

Erie also concludes that Mr. Cooper was not within reasonably close proximity without even discussing how close Mr. Cooper was to the 2004 Chevrolet. Erie's Memo,

---

[4] The fact that both the trailer that was attached to the 2004 Chevrolet and the vehicle Mr. Cooper was riding in were both involved in the collision also demonstrates how closely the vehicles were at the time of the collision.

ECF 15, p. 14. Instead, Erie argues because Mr. Cooper was in a different vehicle, he could not have been in close proximity to the 2004 Chevrolet. Erie's Memo, ECF 15, p. 14. As demonstrated by the Supreme Court of Appeal's decision in *Keefer*, the fact that a person is riding in a different vehicle (in that case a tractor) does not mean the person is not using the insured vehicle (in that case a truck and trailer the tractor was going to be loaded onto). *See Keefer*, 221 W.Va. at 355, 655 S.E.2d at 101. Again, the factor requires an inquiry as to Mr. Cooper's physical distance from the insured vehicle. As Mr. Cooper was traveling immediately behind the 2004 Chevrolet and within the twenty-five to thirty feet that many courts (and the Supreme Court of Appeals of West Virginia) have found to represent close proximity, the proximity fact favors a finding that Mr. Cooper was using the 2004 Chevrolet. *See Keefer*, 221 W.Va. at 355, 655 S.E.2d at 101.

### B. Orientation

Mr. Cooper was sitting in the front seat, facing forward, in a vehicle that was immediately behind the 2004 Chevrolet. *Cooper*, 25, 28, Ex. 1. He was oriented toward the 2004 Chevrolet – he was not moving away from the vehicle, as was the individual in *Cleaver*. *See Cleaver*, 202 W.Va. at 126, 502 S.E.2d. at 442. He was facing and traveling toward the insured vehicle, like the tractor operator in *Keefer*. *See Keefer*, 221 W.Va. at 356, 655 S.E.2d at 102. Erie cites to *Cleaver* in support of its claim that Mr. Cooper had "departed" and, thus was not vehicle orientated. However, as discussed in *Cleaver*, the decedent in that case was actually running away from the vehicle and the purpose for which he was using the vehicle was completed - he had reached his destination. *Cleaver*, 202 W.Va. at 126, 502 S.E.2d. at 442. In this case, and quite the opposite from the decedent in *Cleaver*, Mr. Cooper was moving toward the insured vehicle and the purpose

for which he was using the vehicle was not yet complete. Thus, just like in *Keefer*, the orientation factor favors a finding that Mr. Cooper was using the 2004 Chevrolet at the time of the crash.[5] *Keefer*, 221 W.Va. at 356, 655 S.E.2d at 102.

### C.    Control

The Supreme Court of Appeals of West Virginia has held that the control factor is irrelevant in cases where the intended use of the vehicle does not actually require operation or control of the vehicle. *See Keefer*, 221 W.Va. at 355–56, 655 S.E.2d at 101–102. In *Keefer*, the Court found that the tractor operator's use of the truck and trailer onto which he intended to load the tractor did not require him to operate the truck or trailer, or exert control over it:

> Under the facts of this case, the inquiry as to "whether the individual had relinquished control of the vehicle" is not applicable because Mr. Keefer was not in control of the truck and the intended use of the truck to haul the tractor did not require him to operate the truck during the loading process.

*Id.* Just like in *Keefer*, Mr. Cooper's intended use of the insured vehicle (to transport tools and to lead him to the job site) did not require him to operate the truck. Just as this factor was found irrelevant in *Keefer*, so too is it irrelevant in this case. *Id.*

Even if the Court were to consider the control factor, it still favors a finding of use. Erie simply concludes that because Mr. Cooper was not, at the moment of impact, actively loading or unloading equipment, he had relinquished control. Erie's Memo, ECF 15, p. 15.

---

[5] It should be noted that while the orientation criteria was adopted from *Rau*, an appeals Court in Washington State, the Supreme Court of Washington, en banc, later abandoned this factor holding:
> "[a] narrow focus on the injured person's physical orientation toward or away from the insured vehicle is contrary to the broad commonsense assessment of the reasonable expectations of the insured that the causal connection, geographic proximity, and essential transaction factors are designed to foster. Consequently we find it appropriate to abandon the vehicle oriented factor entirely." *See Butzberger v. Foster*, 89 P.3d 689, 696, 151 Wash.2d 396, 408 (Wash.,2004).

However, control extends beyond the point of physical contact and "particularly when it is still being utilized." *Cleaver*, 202 W.Va. at 127, 502 S.E.2d at 443 (citing with approval to *Bernard v. Nationwide Mut. Fire Ins. Co.*, 206 Ga.App. 519, 426 S.E.2d 29 (Ga. App., 1992)).

Mr. Cooper's use (transportation of equipment and navigation to a job site) was ongoing at the time of the collision. He had not relinquished control insofar as it related to his specific use of the vehicle. Mr. Cooper's use never required operation and, thus, his use had not ceased at the time of the crash.

The degree of control Mr. Cooper was exerting was even greater than the tractor operator in *Keefer*. Whereas Mr. Keefer's use of the trailer had not even begun when the incident occurred, Mr. Cooper was actively in the process of using the 2004 Chevrolet to transport tools and lead him to a job site. *See Keefer*, 221 W.Va. at 355–56, 655 S.E.2d at 101–102. Thus, if this factor is considered, it favors a finding of use. Mr. Cooper had not relinquished control of the vehicle for the purposes for which he was using it at the time of the collision.

### D. Engaged in a transaction reasonably related to use

The final factor is aimed at ensuring that there is a causal relationship between a person's use of a vehicle and his or her injury. As recognized by the Supreme Court of Washington:

> [i]t would defy common sense for an insured vehicle's UIM coverage to extend to an injury wholly unrelated to the use of the vehicle. Nonetheless the requisite causal relation or connection does not require the use of the insured vehicle be a proximate cause of the injury.

*Butzberger*, 89 P.3d at 694, 151 Wash.2d at 404. Because of this, the Supreme Court of Appeals of West Virginia only requires the injured party "to demonstrate that the injury originated in, grew out of, or flowed from the use of the vehicle." *Adkins*, 201 W.Va. at 156, 494 S.E.2d at 923 (citing with approval *McMichael v. Aetna Ins. Co.*, 878 P.2d 61 (Colo. Ct. App., 1994) aff'd 906 P.2d 92 (Colo., 1995)). Erie tries to re-define the term and concludes that Mr. Cooper was not engaged "in any interaction with the 2004 Chevrolet at the time of the motor vehicle collision." Erie's Memo, ECF 15, p. 15. Interaction is not the test. The test is whether or not the injury originated in, grew out of, or flowed from the use of the vehicle. *Adkins*, 201 W.Va. at 156, 494 S.E.2d at 923. At the time of the collision, Mr. Cooper was actively engaged in transactions directly related to his use of the 2004 Chevrolet. The vehicle was being used to transport equipment and lead Mr. Cooper and his coworker to a job site. That is exactly what Mr. Cooper was using the vehicle for at the time of the collision. Thus, his injuries "originated in, grew out of, and flowed from" his use. *Id.*

Just as the Court in *Keefer* found that the tractor operator, who had not even made it to the truck and trailer, was engaged in use "causally connected to the use of the" truck, so too was Mr. Cooper, who was already engaged in his use of the 2004 Chevrolet. *Keefer*, 221 W.Va. at 356, 655 S.E.2d at 102. Moreover, just as the Court in *Keefer* found that it was foreseeable that injuries may occur during the loading process (even though Mr. Keefer had not made it close enough to load at the time), so too was it foreseeable that a work truck used to transport equipment and navigate workers to job sites on the public roads would become involved in a collision and injure employees. *Id.* Thus, Mr. Cooper satisfies the final factor.

### E. The Court must construe the UIM statute liberally in order to provide for the preeminent public policy of full compensation.

The West Virginia legislature has demonstrated a clear intent to afford coverage to anyone "**using**" a vehicle as a means of giving greater protection to those who are involved in automobile accidents and the statute should be liberally construed to effect coverage. *See* Syl. Pt. 3, *Burr v. Nationwide Mut. Ins. Co.*, 178 W.Va. 398, 359 S.E.2d 626 (W.Va., 1987) (emphasis added). Further, the UIM statute is remedial and should be liberally construed. *Perkins v. Doe*, 177 W.Va. 84, 85, 350 S.E.2d 711, 712 (W.Va., 1986). In fact, "the preeminent public policy of this state in uninsured and underinsured motorist cases is that the injured person be fully compensated for his or her damages not compensated by a negligent tortfeasor, up to the limits of the uninsured or underinsured motorist coverage." *State Auto. Mut. Ins. Co. v. Youler*, 183 W.Va. 556, 564, 396 S.E.2d 737, 745 (W.Va., 1990). Therefore, public policy dictates that the Erie Policy be liberally construed and that Mr. Cooper be afforded coverage up to the limits of the Erie Policy.

Mr. Cooper need not satisfy all four of the *Cleaver* factors, but the fact that he does clearly indicates that he was using an insured vehicle at the time of the collision. The Erie policy provides $1 million in UIM coverage for "anyone else, while [using] any owned auto", thus, Mr. Cooper is entitled to UIM coverage as he was using an owned auto. Erie's Motion should be denied, Mr. Cooper's Motion should be granted and the Court should declare that Mr. Cooper is entitled to UIM coverage under the Erie policy.

### III. MR. COOPER IS A PROTECTED PERSON UNDER THE ERIE POLICY WHILE USING AN OWNED AUTO.

The insuring language from the *UIM Endorsement* of Erie's Policy provides the following, in pertinent part:

**OUR PROMISE**
\* \* \*
If Underinsured Motorist Coverage is indicated on the **Declarations**, **we** will pay damages for bodily injury and property damage that **you** or **your** legal representative are legally entitled to recover from the owner of operator of an **underinsured motor vehicle**.

Damages must result from a motor vehicle accident arising out of the ownership or use of the **uninsured motor vehicle** or **underinsured motor vehicle** as a motor vehicle and involve:

1.  bodily injury to **you** or others **we** protect. Bodily injury means physical harm, sickness, disease or resultant death to a person; or

\* \* \*

**OTHERS WE PROTECT**

**We** also protect:

1.  any relative, if **you** are an individual;

2.  anyone else, while **occupying** any **owned auto we insure** other than an **owned auto we insure** being used without the permission of the owner.

3.  anyone else who is entitled to recover damages because of bodily injury to any person protected by this coverage.

4.  If **you** are an individual, anyone else while **occupying a non-own auto we insure** other than:

    a.  one **you** are using that is owned or lease by another person residing in **your** household.

    b.  one furnished or available for the regular use of **you** or anyone residing in **your** household.

    c.  one being operated by anyone other than **you** or a **relative.**

*Policy,* pp. 21-22, Ex. 3 (emphasis in original).[6] A Policy Change Endorsement for West Virginia altered the definition of **"Anyone we protect"** to include "[a]nyone else while using

---

[6] The term "occupying" is defined in the policy to mean: "in or upon, getting into or out of, or getting off." *Policy,* p. 7 of 35, Ex. 3.

12

an **auto we insure** with **your** permission[.]" *Policy*, pp. 9, 24 of 35, Ex. 3 (emphasis in original).[7] There is no question that the Erie Policy insured both owned and non-owned autos. Thus, if Mr. Cooper was using the 2004 Chevrolet as argued above, then the clear language of the UIM endorsement provides coverage as he qualifies as "anyone else while using an auto we insured with your permission".

Erie tries to obscure the issue by arguing, in section 2 of Erie's Memo, that Mr. Cooper does not qualify as a person the Erie Policy protects. Erie's Memo, ECF 15, pp. 8-10. To make this argument, Erie returns to the term "occupying" without recognizing that it planted its pivot foot in the very next section, where Erie admits that West Virginia law requires it to provide coverage to persons "using" an insured vehicle, and not just those occupying a vehicle. Erie's Memo, ECF 15, p. 15 ("While the Erie Policy uses the term occupying...Erie recognizes that under West Virginia law, the issue to be decided is whether Cooper was using the 2004 Chevrolet[.]"). What Erie is really arguing is that because the named insured is not an individual, the policy does not provide UIM coverage for use of a <u>non-owned</u> vehicle. While coverage for non-owned vehicles will be discussed below,[8] Erie has not pointed to any provision of its policy that would dictate that Mr. Cooper does not qualify as a person entitled to UIM protection under the Erie Policy for his use of

---

[7] The Policy Change Endorsement adopted the definition of Persons We Protect that is found in the Liability Protection Section. *See Policy*, p. 24 of 35, Ex. 3 (emphasis in original).

[8] Whether or not Erie is permitted to limit UIM coverage to certain vehicles depending on the identify of the named insured is a separate issue. The threshold issue in this matter is whether or not Erie made a commercially reasonable offer of UIM coverage for non-owned vehicles when it elected to provide liability coverage to non-owned vehicles. As discussed below, an effective offer was not made and, thus, coverage must be afforded. The fact that Erie inserted language in its policy attempting to limit UIM coverage on non-owned autos does not eliminate Erie's burden to prove that a commercially reasonable offer of UIM coverage was made in the first place.

13

the 2004 Chevrolet – <u>an owned auto</u>. In fact, as set forth above, the policy specifically provides coverage (without regard to whether the named insured is an individual or not) to "anyone else, while **occupying** any **owned auto we insure** other than an **owned auto we insure** being used without the permission of the owner." As Mr. Cooper was using the 2004 Chevrolet - an owned auto – he qualifies as person entitled to UIM coverage protection under the Erie Policy.

### IV. ERIE MUST PROVIDE UIM COVERAGE FOR NON-OWNED VEHICLES DUE TO IT'S FAILURE TO MAKE A COMMERCIALLY REASONABLE OFFER.

In addition to being entitled to UIM coverage for his use of the 2004 Chevrolet – an owned auto – Mr. Cooper is also entitled to UIM coverage for his occupancy and use of Mr. Huffman's vehicle, which Erie admits qualifies as an non-owned auto under the Erie Policy. Erie's Memo, ECF 15, p. 6. Importantly, Erie chose to provide $1 million in liability coverage to non-owned autos, like Mr. Huffman's vehicle. See Amended Declarations, Ex. 4.[9] West Virginia Code §33-6-31(b) requires that every insurer providing liability insurance on a vehicle in West Virginia must also provide an option for the insured to purchase underinsured motorist coverage for that vehicle, up to an amount not less than the bodily injury liability limits. Thus, when Erie agreed to provide liability insurance for Pison's non-owned autos, Erie was required to make a commercially reasonable offer of UIM coverage to Pison for the non-owned autos, like the vehicle Mr. Cooper was occupying. See Martin

---

[9] Non-owned autos are listed on the declarations pages as Auto No 12. See Amended Declarations, p. 2 of 25, Ex. 4. The parties agree that Mr. Huffman's vehicle qualifies as an non-owned auto under the Erie Policy. Petition, p. 4 of 8, ¶19, ECF 1. However, Erie claims that it did not charge Pison for UIM coverage for non-owned vehicles and, thus, the policy provides no UIM coverage for non-owned vehicles. Petition, p. 4 of 8, ¶22, ECF 1. See also Policy, p. 2 of 35, Ex. 3. Mr. Cooper argues that irrespective of whether a premium was charged, Erie had a duty to offer Pison UIM coverage for non-owned autos and failed to do so.

*v. State Farm Mut. Auto. Ins. Co.*, 809 F. Supp.2d 496 (S.D. W.Va., 2011) (to fulfill its obligations under *West Virginia Code* §33-6-31(b) an insurer must make an effective offer of the optional UIM coverage).

A commercially reasonable offer is one that provides the insured with "adequate information to make an intelligent decision. The offer must state, in definite, intelligible, and specific terms, the nature of the coverage offered, the coverage limits, and the costs involved." *Martin*, 809 F. Supp.2d 496 (*citing Bias v. Nationwide*, 179 W.Va. 125, 127, 365 S.E.2d 789, 791 (W.Va. 1987). In any litigation challenging an insurance company's offer, "the insurer has the burden of proving that an effective offer [of optional coverage] was made, and that any rejection of said offer by the insured was knowing and informed[.]"Syl. pt. 1, *Bias*.

One way that an insurer can demonstrate a commercially reasonable offer is through the use of the West Virginia Insurance Commissioner's prescribed form. *See West Virginia Insurance Commissioner's Informational Letter No. 121* (July 2000), Ex. 5. The Informational Letter, like *West Virginia Code*, §33-6-31(b), requires the insurer to provide the insured with the premium, or rate calculation for the optional coverage.

Prior to Erie filing this declaratory judgment action, Mr. Cooper, through his counsel, requested documentation of the first party coverage available to Mr. Cooper under the Erie Policy and Erie responded by asserting that Pison rejected UIM Coverage. *See March 10, 2020 Correspondence*, ECF 1-3. As part of that correspondence, Erie produced the UIM Selection / Rejection From signed in February of 2016 which Erie supposedly relied upon

to deny coverage.[10] *See UIM Selection Form* #1, Ex. 6. As argued in Mr. Cooper's Motion, *UIM Selection Form #1* is defective and does not represent a commercially reasonable offer of UIM coverage as the form failed to provide Pison with **any** premium information and does not offer UIM coverage for non-owned vehicles. In fact, for each level of coverage listed on the *UIM Selection Form #1*, Erie failed to list any premium and, instead, typed "Not Applicable" under the premium column. *Id.* Therefore, Erie failed to provide a commercially reasonable offer of UIM coverage through *UIM Selection Form #1*, whether it was for owned or non-owned autos.

"Where an offer of optional coverage is required by statute, the insurer has the burden of proving that an effective offer was made, and that any rejection of said offer by the insured was knowing and informed." *Bias*, 179 W. Va. 125, 365 S.E.2d 789. For an offer to be deemed commercially reasonable, "an offer must state the nature of the coverage offered, the coverage limits, and the costs involved." *Thomas v. McDermitt*, 232 W. Va. 159, 164, 751 S.E.2d 264 (W.Va., 2013) (*citing Bias*, 179 W.Va. at 127, 365 S.E.2d at 791). "Failure to provide an insured with adequate information to make an intelligent decision renders a selection/rejection form defective." *Westfield Ins. Co. v. Bell*, 203 W. Va. 305, 507 S.E.2d 406 (W.Va.,1998). When an insurer is required by statute to offer optional coverage, it is included in the policy by operation of law when the insurer fails to prove an effective offer and a knowing and intelligent rejections by the insurer. *Riffle v. State Farm Mut. Auto. Ins. Co.*, 186 W.Va. 54, 55, 410 S.E.2d 413, 414 (W.Va.,1991) (citing Sly pt. 2, *Bias*, 179 W.Va. 125, 365 S.E.2d 789). In these circumstances, the coverage owed is

---

[10] Contrary to Erie's initial claim, the Pison employee who signed the form did not decline coverage, but instead selected the highest coverage offered. *See UIM Selection Form #1*, Ex. 6.

the amount that the insurer was required to offer under the statute, which is an amount not less than the liability limits. *See Riffle*, 179 W.Va. at 55-56, 410 S.E.2d at 414-415.

As Erie failed to make a commercially reasonable offer and obtain a knowing and intelligent rejection of UIM coverage, Erie is therefore required to provide $1 million in UIM coverage for those autos to which it agreed to provide liability coverage. This includes both the owned autos, but also the non-owned autos listed on the declarations page.[11]

Since the filing of Mr. Cooper's Motion challenging whether the UIM form represented a commercially reasonable offer, and eight months after Erie produced UIM Selection Form #1, Erie has now produced a new form they apparently rely upon to prove a commercially reasonable offer was made. One week ago, on November 25, 2020, Erie produced another UIM selection form ("UIM Selection Form #2") which it claims was discovered within the independent insurance agent's files and was completed in March of 2016 - the very next month after *UIM Selection Form # 1* was completed. *See UIM Selection Form #2*, Ex. 7. This newly discovered form is signed, but not dated. *See UIM Selection Form #2*, Ex. 7. While *UIM Selection Form # 2* lists premiums, it incorrectly states that the premiums are applicable to just one vehicle, without identifying on which vehicle the coverage was being offered. See *UIM Selection Form #2*, Ex. 7. What we know from the *Amended Declarations* is that Erie charged a premium for UIM Coverage for two vehicles. *See Amended Declarations*, Ex. 4. This fact is consistent with the defective *UIM*

---

[11] Erie cannot circumvent the requirement that it make a commercially reasonable offer of UIM coverage by including, after inception of the policy, language that UIM coverage is only provided if a premium is listed on the declarations page or by exclusionary language based on whether the named insured is an individual. Because Erie agreed to provide liability coverage for non-owned autos, it was required to make a commercially reasonable offer of UIM coverage and failed to do so.

*Selection Form #1* and completely inconsistent with *UIM Selection Form #2*. Therefore, even if the newly discovered form was, in fact, completed a month after the first form, the rate calculation on UIM Selection Form #2 was incorrect and did not effectively provide an offer of UIM coverage for the four types of vehicles Erie chose to provide liability coverage to under the Policy.

Regardless of which form is considered, the forms fail to state in definite, intelligible, and specific terms, the nature of the coverage offered and the accurate costs or rate calculation thereof, as required by law. *See Martin*, 809 F. Supp.2d 496. As such, both forms are defective. As both forms are defective and as Erie has not produced any other evidence to meet its burden to prove that commercially reasonable offer was extended, UIM coverage must be extended for each of the vehicles Erie agreed to provide liability coverage for under the policy, including the non-owned autos like Mr. Hoffman's vehicle.

Erie tries to get around its obligations to provide an offer of UIM coverage for each vehicle it insured for liability purposes by pointing to the fact that it did not charge a premium for UIM coverage for non-owned autos, or to exclusionary language in the policy that limits UIM coverage for non-own autos when the named insured is not an individual. The fact that Erie did not charge a premium or attempted to limit coverage with an exclusion in the Policy has nothing to do with the threshold question as to whether or not Erie made an commercially reasonable and effective offer of UIM coverage, which is Erie's burden to prove. Erie has not cited to a single authority for the proposition that failing to charge a premium or burying language in a policy excluding UIM coverage is sufficient to meet its burden of making an offer of UIM coverage that is definite, intelligible, and specific in terms of the nature of the coverage offered and the accurate costs or rate calculation.

Mr Cooper will agree that Erie was not required to provide Pison with liability coverage for non-owned autos. However, when Erie chose to do so, it was then legally obligated to make an offer of UIM coverage for those non-owned autos. It never did. The two forms that have now been produced only provide premiums for one or two of the autos insured for liability coverage and are defective in the ways described above. The failure to provide a commercially reasonable offer of UIM coverage on the non-owned autos and the failure to obtain a knowing and intelligent rejection dictates that coverage be provided. Syl. Pt. 2, in part, *Riffle*, 186 W. Va. 54, 410 S.E.2d 413.

WHEREFORE, for the reasons set forth above, James Skylar Cooper requests that the Court deny Erie's Motion, grant his Motion and declare that he is entitled to the UIM coverage provided by the Erie policy both for his use of an owned auto and for his occupancy and use of a non-owned auto.

**JAMES SKYLAR COOPER,**

**Defendant and Counterclaimant,**

**By Counsel:**

/ss/ *R. Chad Duffield*
ROBERT A. CAMPBELL (W. Va. State Bar No. 6052)
R. CHAD DUFFIELD (W. Va. State Bar No. 9583)
JENNIFER D. ROUSH (W.Va. State Bar No. 11165)
FARMER CLINE & CAMPBELL, PLLC
746 Myrtle Road (25314)
Post Office Box 3842
Charleston, WV 25338
(304) 346-5990

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

ERIE INSURANCE PROPERTY
& CASUALTY COMPANY,

      Petitioner,

v.                                               CIVIL ACTION NO.: 2:20-cv-00321

JAMES SKYLAR COOPER,

      Respondent.

## CERTIFICATE OF SERVICE

I hereby certify that on December 2, 2020, I presented the foregoing "James Skylar Cooper's Response to Erie Property And Casualty Company's Motion for Summary Judgment" to the Clerk of Court for filing and uploading to the CM/ECF system and I hereby certify that I have served the following CM/ECF participants:

        Matthew J. Perry, Esq.
        James D. Lamp, Esq.
        Lamp Bartram Levy Trautwein & Perry, PLLC
        720 Fourth Avenue
        Post Office Box 2488
        Huntington, WV 25725-2488

        *Counsel for Petitioner*

        */ss/ R. Chad Duffield*
        R. CHAD DUFFIELD
        (W.Va. State Bar No. 9583)