IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

**ERIE INSURANCE PROPERTY
AND CASUALTY COMPANY,**

**Plaintiff,**

**v.**                                                                    **CIVIL ACTION NO.:  2:20-CV-00321**
                                                                           **The Honorable Irene C. Berger, Judge**


**JAMES SKYLAR COOPER,**

**Defendant and Counterclaimant.**


**ERIE INSURANCE PROPERTY AND CASUALTY
COMPANY'S RESPONSE IN OPPOSITION TO JAMES
SKYLAR COOPER'S MOTION FOR SUMMARY JUDGMENT
ON COUNTERCLAIM FOR DECLARATORY RELIEF**

**NOW COMES** the Plaintiff, Erie Insurance Property & Casualty Company, (hereinafter

"Erie"), by and through counsel, and pursuant to this Court's Scheduling Order [Docket No. 10],

respectfully submits its response in opposition to the Motion for Summary Judgment filed by the

Defendant and Counterclaimant, James Skylar Cooper ("Defendant").  As set forth herein,

Defendant's Motion for Summary Judgment should be denied on the basis that the Defendant has

failed to demonstrate any entitlement to the relief sought and is contrary to clear West Virginia

precedent.  For the same reason, Erie asserts that it is entitled to judgment as a matter of law as set

forth in its previously filed Motion for Summary Judgment.

*Introductory Statement*

While West Virginia law has clearly contemplated that "use" of a vehicle can in limited

instances encompass activities outside of operating or occupying a vehicle, there are no cases in

1

West Virginia that have extended "use" to the factual scenario currently before this Court. Defendant seeks to have this Court find that he was using a 2004 Chevrolet Silverado owned by Pison Management, LLC while occupying and traveling as a passenger in a 2007 Dodge Caliber owned by Rick Huffman.  To accept the Defendant's assertions in this case would require this Court to find that an individual can be occupying and traveling in one vehicle and be simultaneously using a separate vehicle.  Notably, the Defendant has failed to identify a single case, inside or outside of West Virginia, which has reached such a conclusion.  The reasoning for that is straightforward:  while "use" of a vehicle can be broader than operating or occupying a vehicle, the framework for determining "use" is still premised on the logical requirement that there be a causal connection between the alleged use of the vehicle and the injuries sustained.

The undisputed facts in this case demonstrate: 1) the Defendant had no physical contact with the 2004 Chevrolet Silverado that he claims he was using, 2) had no control of the 2004 Chevrolet Silverado (or control that was easily or reasonably at hand), and 3) was no longer utilizing the 2004 Chevrolet Silverado once he had completed loading it and was occupying the 2007 Dodge Caliber and traveling to a job site.  This evidence unequivocally establishes the lack of any causal connection between Defendant's injuries and the Pison Management truck that was traveling ahead of him at the time of the motor vehicle accident.

The West Virginia Supreme Court of Appeals has identified four factors to consider when determining whether there was "use" of the vehicle.  *See Cleaver v. Big Arm Bar & Grill*, 502 S.E.2d 438, 440 (W.Va. 1998).  However, these factors have been utilized in factual situations where the individual is separated from the car, but not when there is clear use of a separate vehicle, as is the case here.  The factors identified in *Cleaver* cannot be considered in a vacuum, and must be considered in the context of whether an assessment of those factors support a finding of the

2

requisite causal connection between the vehicle and the injuries, such that it can be concluded that use of the vehicle continued even though the individual was no longer occupying or in physical contact with the vehicle.  It is on this point that a closer examination of the Defendant's arguments for continued use must fail.

In an implicit acknowledgement of the weaknesses present in his argument for a finding of "use" of the 2004 Chevrolet Silverado, the Defendant also seeks to have this Court reform the Erie Policy to extend underinsured motorist coverage to the 2007 Dodge Caliber, a non-owned auto that was separately insured by Rick Huffman.  *See Defendant's Memorandum in Support of Motion for Summary Judgment*, fn. 5 (Document 17).  In doing so, the Defendant again seeks to have this Court expand the law in West Virginia as it currently exists to allow for reformation of a policy of insurance and extend underinsured motorist coverage to non-owned autos, despite clear and unambiguous language in the Erie Policy that establishes that underinsured motorist coverage would, under no circumstances, extend to non-owned autos when the insured is not an individual.

The Defendant would have this Court expand the remedy provided in *Bias v. Nationwide*, 179 W. Va. 125, 365 S.E.2d 189 (1987), a case whose holding simply allows for a "roll-up" of underinsured motorist coverage to an amount equal to liability limits in the event of an ineffective offer of coverage, to include changing other terms and conditions of the Erie Policy.  The Defendant makes this argument despite the fact that the Erie Policy already provided underinsured motorist coverage in an amount equal to liability limits.  As West Virginia case law makes clear, any defects in the form utilized to make an offer of underinsured motorist coverage does not result in an automatic roll-up of coverage.  *See Thomas v. McDermitt*, 232 W. Va. 159, 751 S.E.2d 264 (2013).  Frankly, whether the Defendant, who is not the named insured, has standing to even make such an argument remains in question; and the fact remains that the *Bias* decision does not provide

as a remedy the ability for the Court to reform the terms and conditions of the insurance policy outside of a reformation of the limits of coverage to an amount equal to liability limits (a situation that already exists in this case).

Separately, and more importantly, the evidence in this case establishes that Pison Management, LLC was provided with a commercially reasonable offer of underinsured motorist coverage and made a knowing and informed selection of coverage. While Plaintiff's Motion for Summary Judgment takes issue with the forms utilized for the purchase of underinsured motorist coverage on the basis that the form failed to list applicable premiums for each level of coverage, the evidence in this case establishes that another form was subsequently utilized where premium charges were listed. This second form complies with the requirements of WV Code § 33-6-31d and provides a presumption of a commercially reasonable offer and knowing and informed selection of coverage. Coupled with that fact, the attached affidavit of Lisa White, the principal agent for Pison Management, LLC, establishes that Pison Management was provided with the requisite information to establish the required standard under *Bias v. Nationwide*, 179 W. Va. 125, 365 S.E.2d 789 (1987).

The success of Defendant's arguments in his Motion for Summary Judgment are wholly dependent on this Court expanding and extending current West Virginia law as it relates to the "use" doctrine and the remedies available when there is an ineffective offer of underinsured motorist coverage. Defendant's need for an expansion of the law is telling, as it further emphasizes that he is not entitled to the relief that he seeks. For these reasons, Defendant's Motion for Summary Judgment should be denied in its entirety, and this Court should find that the Defendant was not "using" the 2004 Chevrolet Silverado that was owned and insured by Pison Management and that underinsured motorist coverage does not extend to the 2007 Dodge Silverado that the

Defendant was occupying and using, a non-owned auto that was separately insured by Rick Huffman.

### I.      The Defendant Was Not Using An Owned Auto At The Time Of The Collision

The Erie Policy in this case clearly establishes that underinsured motorist coverage is only provided to certain classifications of autos.  Item 5 of the Declarations of the Erie Policy identifies the types of coverage and levels of coverage provided, and begins with the express statement that "INSURANCE IS PROVIDED WHERE A PREMIUM, OR INCL, IS SHOWN FOR THE COVERAGE."  [Docket No. 14-3] p 2.  Item 5 of the Declarations also clearly establishes that no premium was charged for underinsured motorist coverage with respect to Hired Autos (Auto 11) and Non-Owned Autos (Auto 12).  Instead, the only premium charges for underinsured motorist coverage involve the two listed, owned autos of Pison Management (Auto 10 and Auto 13).  Based on the Declarations alone, it is clear that the Erie Policy, by its express terms, does not provide underinsured motorist coverage to non-owned autos, such as the 2007 Dodge Silverado owned by Rick Huffman.

Thus, for the Defendant in this case to be entitled to underinsured motorist coverage under the Erie Policy, he must therefore establish "use" of one of the two "Owned Autos" insured for underinsured motorist coverage.  Based on West Virginia case law and precedent, the Defendant must establish that there was a "causal connection" between the injuries he sustained and the use of the 2004 Chevrolet Silverado.  *See Cleaver v. Big Arm Bar & Grill*, 502 S.E.2d 438, 440 (W.Va. 1998).  "Under W.Va. Code, 33-6-31, insurers must provide uninsured motorist coverage, and make available underinsured motorist coverage, for injuries causally connected to the use of the vehicle, and foreseeably identifiable with the normal use of the vehicle."  Syl. Pt. 4, *Adkins v. Meador*, 201 W. Va. 148, 150, 494 S.E.2d 915, 917 (1997).  "This causal connection must be more

than incidental, fortuitous or but for." *Keefer v. Ferrell,* 221 W. Va. 348, 359, 655 S.E.2d 94, 105 (2007) (internal citations omitted).

As noted previously in Erie's Motion for Summary Judgment and Memorandum In Support in this case, a body of law has developed in West Virginia with respect to the use of a vehicle when the claimant is outside of the vehicle at the time of the injury.  In *Cleaver*, the Court articulated a four-part test to determine if a motor vehicle was being "used" at the time of an incident:

    a)  whether the individual was in reasonably close proximity to the insured vehicle at the time of the accident;

    b)  whether the individual was vehicle oriented as opposed to highway or sidewalk oriented;

    c)  whether the individual had relinquished control of the vehicle; and

    d)  whether the individual was engaged in a transaction reasonably related to the use of the vehicle at the time of the accident.

*Cleaver,* 502 S.E.2d at Syl. Pt. 2.  Each of these factors are addressed in further detail herein.

### A. Proximity

The first element of the *Cleaver* factors is close proximity to the insured vehicle.  The Defendant argues in his Motion for Summary Judgment that he was following "close" behind the 2004 Chevrolet Silverado and since he was closely following the vehicle, that fact supports a finding that he was "using" the vehicle at the time.  Each of the cases cited by the Defendant in support of his proximity argument all involve cases where the individual was outside of any vehicle and the proximity argument supported a causal connection between the injury and the vehicle because the individuals in those cases were performing activities that were still associated with the use of the vehicle.  *See e.g. Great American Ins. Co. v. Cassell*, 239 Va. 421, 389 S.E.2d 476 (Va. 1990) (fireman struck while using his truck to block traffic); *Simpson v. United States Fidelity & Guar. Co.*, 562 N.W.2d 627 (Iowa 1997) (employee struck while returning to truck to obtain a tool

to inspect a water main valve); *Oberkramer v. Reliance Ins. Co.*, 650 S.W.2d 300 (Mo. App. E. D. 1983) (police officer struck while using his vehicle for a road block); *Hartford Acc. Indem. Co. v. Booker*, 140 Ga. App. 3, 230 S.E.2d 70 (Ga. App. 1976) (garbage collector struck while collecting garbage to place in garbage truck). In each instance, the "use" of the vehicle arose from facts that, although the individual was outside of the vehicle, the individual's activities were connected to utilization of the vehicle for that activity.

The facts here are wholly different than the cases cited by Defendant. In this case, the Defendant was traveling as a passenger in a different vehicle at the time of the motor vehicle accident. If the Court were to accept such a proximity argument for establishing the requisite causal connection between the injuries and the vehicle, then "use" could be found for every vehicle that happened to be in proximity to the vehicle occupied by the individual that sustained injury.[1] When looking at proximity in that context, and the cases cited by the Defendant in reliance for this argument, what is clearly missing from the analysis is factual support that causally connects the Defendant's injuries to the 2004 Chevrolet Silverado. In other words, the Defendant in this case was not in the process of utilizing the 2004 Chevrolet Silverado for any activity that was foreseeably identifiable with his injuries. Simply following the vehicle at issue, as part of a convoy of vehicles that are traveling to a work site, does not provide the causal connection required to establish continued use.

### B.  Orientation

Likewise, the Defendant's orientation argument fails for the same lack of causal connection. In his Motion for Summary Judgment, the Defendant asserts that because he was

---

[1] Imagine the scenario where an occupant of a vehicle was rear-ended by another vehicle while stuck in a traffic jam. Simply because vehicles were in close proximity to the struck vehicle could not conceivably result in a finding that the injured occupant of one vehicle was "using" all of the vehicles in proximity. Again, what is missing in that scenario is the underlying factual predicate that the vehicle in proximity was being utilized.

seated in the front seat of the 2007 Dodge Caliber, facing the 2004 Chevrolet Silverado, his orientation towards the vehicle supports a finding of "use".  But what is missing from the analysis is the lack of any evidence that the orientation was in connection with the utilization of the 2004 Chevrolet Silverado.  The only case cited in support of the Defendant's orientation argument is *Keefer v. Ferrell*, 221 W. Va. 348, 655 S.E.2d 94, a case in which "use" was found when the plaintiff was in the process of loading a tractor onto the back of the truck in question.  Again, what is present in the facts of *Keefer* (and wholly absent in the instant case) is an activity that suggests ongoing utilization of the vehicle at issue.  In *Keefer*, the plaintiff was operating a farm tractor, oriented toward the truck that he was <u>loading</u> the tractor onto.

In this case, the Defendant was simply trailing another vehicle that was headed to the same destination.  The Defendant was not utilizing the 2004 Chevrolet Silverado for any purpose.  In a vacuum, and out of context, the Defendant's argument might support an orientation argument.  However, when considering that the *Cleaver* factors are guides for establishing the requisite causal connection for use, simply because the Defendant happened to be pointed in the direction of the 2004 Chevrolet Silverado does not create facts to support that the 2004 Chevrolet Silverado was causally connected the injuries he sustained when he was struck by the vehicle operated by  Thelma White.[2]

### C.  Control

The lack of any evidence in this case that the Defendant maintained control of the 2003 Chevrolet Silverado is self-evident.  The undisputed facts in this case establish that the Defendant had no control whatsoever of the 2004 Chevrolet Silverado, which was traveling in front of him

---

[2] If the Defendant had been turned around and looking out the back window of the Huffman vehicle at the time of the collision, his orientation would not have been to the 2004 Chevrolet Silverado, to take Defendant's argument to the extreme.  This distinction is to make more vivid the fact that where the Defendant was looking does not support the utilization requirement contemplated in the *Cleaver* analysis.

and in the control of its driver, Demetrius Elder.  Seemingly, the Defendant acknowledges the lack of control, but then asserts that a finding of control is still present because the Defendant's control of the truck was ongoing since he was following the truck and the truck contained equipment that he would later use once he arrived at the job site.

While Defendant maintains he continued to have control of the 2004 Chevrolet Silverado at the time of the motor vehicle accident, the term control should be applied in its common, ordinary sense.  *Black's Law Dictionary* defines control as:

> Power or authority to manage, direct, superintend, restrict, regulate, govern, administer, or oversee.  The ability to exercise a restraining or directing influence over something.
>
> *Black's Law Dictionary*, 6th Ed.

As a passenger in a wholly separate vehicle, there is simply no basis by which the Defendant can legitimately argue that he continued to maintain "control" of the 2004 Chevrolet Silverado traveling in front of him.

In *Keefer*, the Court disregarded the control factor because the plaintiff in that case, in the process of loading the tractor on the truck, was clearly not in control of the truck at the time. However, the plaintiff in *Keefer* was <u>in the process of loading the tractor on the truck</u>.  While the facts of this case might support a finding of "use" of the 2004 Chevrolet Silverado during the period of time that the Defendant was actually loading equipment onto the Silverado, that prior use does not simply become perpetual and constitute uninterrupted and continued "use" once the Defendant left the Silverado, got into a separate vehicle, and left the first job site to ride to a new job site.

In fact, the case cited with approval in *Cleaver*, noted in Defendant's Memorandum in Support of Summary Judgment, reaffirms the lack of control and use in this case.  In *Bernard v.*

*Nationwide Mutual Insurance Co.*, 206 Ga. App. 519, 426 S.E.2d 29 (Ga. App. 1992), the Court of Appeals of Georgia affirmed a trial court's finding of no coverage because the plaintiff was not using the vehicle at the time of his injuries.   In *Bernard*, the husband of the president of a corporation was struck and killed by another driver after he had parked his car.   The decedent's wife sought coverage for her husband's estate under the auto policy that insured the vehicle he had just parked.   Noting that "use of the vehicle within the contemplation of a liability policy or statute 'would seem to extend at least to the point, beyond physical contact, where control over the instrumentality is easily or reasonably at hand, and particularly when it is still being 'utilized,'" the Court found that the decedent was no longer in control of the vehicle or where control was easily or reasonably at hand.   On that basis, the Court concluded that there was no continued "use" of the vehicle he had parked.   As in *Bernard* and *Cleaver*, the facts of this case clearly establish that the Defendant fully relinquished control of the 2004 Chevrolet Silverado when he left the first job site, and the lack of control continued through the time of the motor vehicle accident.

### D.  Engaged In A Transaction Reasonably Related To Use

With respect to the final Cleaver factor, whether the Defendant was engaged in a transaction reasonably related to the use of the vehicle at the time of the accident, the evidence likewise establishes that the Defendant was not engaged in any interaction with the 2004 Chevrolet Silverado at the time of the motor vehicle accident.   Simply following another vehicle does not constitute the engagement in a transaction with the vehicle traveling in front of you.   While the loading of the lawn-cutting equipment earlier in the day may constitute a transaction reasonably related to the use of the vehicle, that transaction was clearly concluded when Defendant left the Silverado and traveled with Huffman to the job site in a separate vehicle.   The fact that the 2004

Chevrolet Silverado was transporting Pison Management owned equipment to a job site that the Defendant would later use does not result in ongoing engagement with the truck itself.

Importantly, the fourth *Cleaver* factor incorporates a temporal component in the analysis which is simply not present in the current case. By its terms, this factor requires a finding that the individual "was engaged" in a transaction – not had been engaged in a transaction or would later be engaged in a transaction - associated with the vehicle. This temporal component is fatal to the Defendant's argument, as the evidence at most establishes that the Defendant had been engaged in a completed transaction related to the 2004 Chevrolet Silverado when he loaded the truck and would later be engaged in a transaction related to the 2004 Chevrolet Silverado, potentially, once he arrived at the job site he was traveling to, but there is no evidence to support a finding that the Defendant was engaged with the Silverado at the time of the motor vehicle accident. To find otherwise would be completely contrary to West Virginia precedent.

For example, in *Cleaver*, the West Virginia Supreme Court of Appeals found that Andrew Haba was no longer engaged in a transaction related to his car when he exited it and proceeded across the street to enter a bar. His prior use of the vehicle did not create the ongoing engagement contemplated by this factor. In *Keefer*, the West Virginia Supreme Court of Appeals did find that the plaintiff was engaged in a transaction related to the truck, but that was because he was in the process of loading a tractor onto it. In looking at the results of these two cases, the temporal requirement for this factor becomes clear.

What West Virginia case law makes evident that the *Cleaver* factors are assessments made to see if the injuries at issue are causally connected to a specific vehicle and whether it is foreseeable that the injuries arose from that vehicle. In the present case, the evidence establishes no causal connection between Cooper's injuries and the 2004 Chevrolet Silverado. The injuries

to Cooper occurred because a vehicle operated by Thelma White crossed center and struck the Huffman vehicle.  Those injuries did not occur through the foreseeable use of the 2004 Chevrolet Silverado that was traveling in front of the Huffman vehicle.  The logic manifested in West Virginia case law dictates a finding of no use by the Defendant of the 2004 Chevrolet Silverado at the time of the motor vehicle accident.

## II.    Defendant's Challenge Concerning The Offer Of UIM Coverage Does Not Alter The Terms And Conditions Of The Erie Policy

Through his Motion for Summary Judgment, the Defendant asserts an alternative theory for the recovery of underinsured motorist coverage wholly apart from his claimed "use" of the 2004 Chevrolet Silverado.  The Defendant's alternative theory is that this Court should conclude that Pison Management, a non-party to this action, failed to receive a commercially reasonable offer of UIM coverage and make a knowing and informed selection of UIM coverage pursuant to the West Virginia Supreme Court of Appeals' holding in *Bias v. Nationwide*, 179 W. Va. 125, 365 S.E.2d 789 (1987).  However, rather than seeking a roll-up of coverage to an amount of UIM coverage equal to liability limits, which is the remedy provided by *Bias*, the Defendant is seeking to have this Court reform the terms and conditions of the Erie Policy to extend UIM coverage to non-owned autos.[3]

There are multiple fallacies in Defendant's argument on this point.  First, the evidence in this case establishes that there was a commercially reasonable offer of underinsured motorist coverage and a knowing and informed selection of coverage by Pison Management, LLC.  As has been clearly established in *Thomas v. McDermitt*, 231 W. Va. 660, 749 S.E.2d 352 (2013), any defect in the forms utilized for the selection or rejection or underinsured motorist coverage does

---

[3] At the outset, it should be noted that there is no viable *Bias* claim in this case, as Pison Management was provided underinsured motorist coverage in an amount equal to the liability limits provided by the Erie Policy.

not result in an automatic "roll-up" of coverage, but a reversion to the standards in *Bias* and the ability of an insurer to establish evidence of an effective offer. *See, e.g. Martin v. State Farm Mut. Auto. Ins. Co.*, 809 F. Supp.2d 496 (S.D. W. Va. August 22, 2011) (Finding a commercially reasonable offer and knowing and informed selection of coverage based on agent affidavit). In this case, the forms utilized for the selection of underinsured motorist coverage prior to the motor vehicle accident provided associated premium costs and entitle Erie to the presumption provided under WV Code § 33-6-31d. Separately, there is direct evidence by way of the attached affidavits that clearly establish that Pison Management, LLC was advised of the nature and purpose of underinsured motorist coverage, the various coverage levels available and the associated premium costs. Pursuant to *Bias*, this evidence clearly establishes an effective offer and Defendant's claim otherwise must fail.

The second fallacy in Defendant's argument is that the UM/UIM Endorsement, by its express terms, would never extend underinsured motorist coverage to non-owned autos when the named insured is not an individual. Accordingly, in order for the Plaintiff to prevail on this argument, this Court would have to broaden the clear scope of WV Code 33-6-31 and then reform the language of the Erie Policy to remove language that is contained in the UM/UIM endorsement that restricts underinsured motorist coverage for non-owned autos.

A.   ***The Attached Affidavits Conclusively Establish A Commercially Reasonable Offer And A Knowing And Informed Selection Of Underinsured Motorist Coverage***

The genesis of the requirement under West Virginia law for the use of a selection / rejection form in the selection or rejection of uninsured or underinsured motorists coverage stems from West Virginia Code §33-6-31. That statutory provision requires that offers of uninsured and underinsured motorists coverage be made available to policyholders up to specified amounts. W.

Va. Code § 33-6-31(b).  The West Virginia Supreme Court of Appeals has found the language of W. Va. Code § 33-6-31(b) to be mandatory and has accordingly held that, "where an offer of optional coverage is required by statute, the insurer has the burden of proving that an effective offer was made, and that any rejection of said offer by the insured was knowing and informed. Syllabus Pt. 1, *Bias v. Nationwide*, 179 W. Va. 125, 365 S.E.2d 789.  In order to meet the burden of proving an effective offer of uninsured or underinsured motorists coverage, case law relied on by the Court indicated that, "the insurer's offer must be made in a commercially reasonable manner, so as to provide the insured with adequate information to make an intelligent decision." *Id.*, citing *State Farm Mutual Automobile Insurance Co. v. Wannamaker*, 291 S.C. 518, 354 S.E.2d 555 (1987).

As a result of the requirements of W. Va. Code § 33-6-31(b) and case law stemming from its interpretation, the West Virginia Legislature enacted W. Va. Code § 33-6-31d, effective April 10, 1993.  W. Va. Code § 33-6-31d provided the statutory framework for the offer of uninsured and underinsured motorists coverage.  This statute further provides that if the statutory framework is complied with, a presumption results that an effective offer of the optional coverages was made and that the applicant exercised a knowing and intelligent election or rejection of that coverage. W. Va. Code § 33-6-31d.  Under the new statutory framework, the West Virginia legislature provided a consistent and regulated method for insurers to follow in the offer of uninsured and underinsured motorists coverage.  With the advent of this statutory framework, the West Virginia Legislature also created a safe harbor for insurers by stating within the statute that,

> The contents of a form described in this section which has been signed by an applicant shall create a presumption that such applicant and all named insureds received an effective offer of the option coverages described in this section and that such applicant exercised a knowing and intelligent election or rejection, as the case may be, of such offer as specified in the form.

W. Va. Code § 33-6-31d(b).

In *Thomas v. McDermitt*, 231 W. Va. 660, 749 S.E.2d 352, the West Virginia Supreme Court of Appeals clarified the effects of WV Code 33-6-31d and the impact resulting from the failure of an insurer to utilize the Insurance Commissioner's prescribed form.  The Court held:

> Based upon the foregoing and in answer to the certified question presented herein, this Court holds as follows: An insurance company's failure to use the West Virginia Insurance Commissioner's prescribed forms pursuant to West Virginia Code § 33-6-31d (2011) results in the loss of the statutory presumption and a reversion to the standards enunciated in *Bias v. Nationwide Mutual Insurance Co.*, 179 W. Va. 125, 365 S.E.2d 789 (1987). Thus, upon loss of the presumption, the insurer is thereafter obligated, under the standards articulated in *Bias*, to prove that (1) it made a commercially reasonable offer of coverage to the insured, and (2) the insured's rejection of such coverage was knowing and intelligent.

> *Thomas v. McDermitt*, 231 W. Va. 660, 749 S.E.2d 352 (2013).

In the present case, Erie is entitled to the statutory presumption provided by WV Code 33-6-31d.  The selection / rejection forms in effect at the time of the motor vehicle accident comports with the requirements of the Informational Letter No. 121, issued by the West Virginia Insurance Commissioner, and the promulgated form attached thereto with respect to single limit offers of underinsured motorist coverage.  Erie's form contains all of the same information, provides offers consistent with the requirements for underinsured motorist coverage, and the form was appropriately completed by the insured.

However, even if Erie's form was not entitled to the presumption provided by WV Code 33-6-31d, the evidence in this case unequivocally establishes that Pison Management, LLC was provided with a commercially reasonable offer of underinsured motorist coverage and made a knowing and informed decision when it selected coverage in an amount equal to liability limits. As set forth in the attached affidavit of Lisa White, the principal agent that worked with Pison

Management with respect to the Erie Policy, Ms. White explained to Pison Management, LLC the purpose of underinsured motorist coverage, explained the various levels of coverage that could be purchased, and explained the premium charges related to each level of coverage.  *See Affidavit of Lisa White*, a copy of which is attached hereto and incorporated herein as "Exhibit 1".

Furthermore, the attached Affidavit of Bill Turner, the owner of Pison Management LLC, confirms the fact that Erie made an effective offer of underinsured motorist coverage under the Erie Policy at issue and that Pison Management, LLC made a knowing and informed selection of coverage under that policy.  *See Affidavit of Bill Turner*, a copy of which is attached hereto and incorporated herein as "Exhibit 2".  Mr. Turner, as the owner of the company, was the individual responsible for selecting and purchasing insurance for Pison Management, LLC, including the selection and purchase of the Erie policy at issue.  *Id*.  He was provided information from Lisa White of White Insurance Associates, Inc. related to the Erie Policy at issue concerning (1) the purpose of underinsured motorist coverage, (2) the various levels of coverage that could be purchased, and (3) the premium charges related to each level of coverage offered under the Erie policy.  *Id*.

This is the very evidence required under *Bias* to establish an effective offer and knowing and informed selection of coverage.  While there is no roll-up claim in this case since Pison Management, LLC maintained underinsured motorist coverage in an amount equal to liability limits, there is simply no basis and no evidence identified by the Defendant which would support the remedy he is seeking, which is to extend underinsured motorist coverage to a non-owned auto that was separately insured by a different policy of insurance and was not owned by Pison Management, LLC nor insured under the Erie Policy.

**B.      *The Terms Of Erie's UM/UIM Endorsement Separately Exclude UIM Coverage For Non-Owned Autos***

Separately, even if Defendant had a colorable claim for a roll-up of coverage pursuant to *Bias*, that claim does not provide the basis by which this Court can alter the terms and conditions of the Erie Policy.  While Plaintiff seeks to have this Court extend underinsured motorist coverage to a non-owned auto, in clear contravention to the terms of the Erie Policy, a claim pursuant to *Bias* provides no legal authority to alter the terms and conditions of the Erie Policy, terms and conditions that expressly preclude underinsured motorist coverage for non-owned autos.

Underinsured motorists coverage is provided by way of endorsement to the Erie Policy. The insuring provision for that coverage provides as follows:

> **UNINSURED/UNDERINSURED MOTORISTS COVERAGE ENDORSEMENT – WEST VIRGINIA**
>
> **OUR PROMISE**
>
> **We** will pay damages for bodily injury and property damage that **you** or **your** legal representative are legally entitled to recover from the owner or operator of an **uninsured motor vehicle**.   If Underinsured Motorists Coverage is indicated on the **Declarations, we** will pay damages for bodily injury and property damage that **you** or **your** legal representative are legally entitled to recover from the owner or operator of an **underinsured motor vehicle**.
>
> Damages must result from a motor vehicle accident arising out of the ownership or use of the **uninsured motor vehicle** or **underinsured motor vehicle** as a motor vehicle and involve:
>
> 1.  Bodily injury to **you** or others **we** protect.  Bodily injury means physical harm, sickness, disease or resultant death to a person; or
>
> 2.  Property damage, meaning destruction of or injury to:
>
>     a.  An **owned auto we insure** and property owned by **anyone we protect** while contained in such **auto;**

17

b. Property owned by **you** or a **relative** while contained in any **auto we insure** under this coverage; and

c. Any other property (except a **motor vehicle**) owned by **anyone we protect** and located in West Virginia.

If loss results in an Uninsured or Underinsured Motorists Property Damage claim, **we** will pay **you** the greater of the fair market rental value of a like kind replacement vehicle or the amount to which **you** are entitled under Transportation Expenses Coverage, if purchased.

**We** will not be bound by a judgment against the owner or operator of the **uninsured motor vehicle** or **underinsured motor vehicle** on issues of liability or amount of damages unless it is obtained with **our** written consent.

[Docket No. 14-3] Uninsured/Underinsured Motorists Coverage Endorsement – West Virginia, p. 1.

For bodily injury, the insuring provision limits underinsured motorist coverage to "you" and "others we protect". "You" is defined by the Erie Policy as follows:

**ADDITIONAL ERIE INSURANCE COMPANY AND ERIE INSURANCE PROPERTY AND CASUALTY COMPANY DEFINITIONS**

**"you", "your"** and **"Named Insured"** means the person(s) or organization(s) named in Item 1 on the **Declarations.** Except in the **RIGHTS AND DUTIES – GENERAL POLICY CONDITIONS** Section, these words include **your** spouse if a resident of the same household.

[Docket No. 14-3] Commercial Auto Insurance Policy Form, p. 5. The Erie Policy lists Pison Management, LLC as the Named Insured. [Docket No. 14-3] Declarations, Item 1. Cooper is not a Named Insured and does not qualify as "you" under the Erie Policy. As to Others We Protect, the UM/UIM Endorsement provides:

**OTHERS WE PROTECT**

**We** also protect:

1. any **relative** if **you** are an individual.

2. anyone else, while **occupying** any **owned auto we insure** other than an **owned auto we insure** being used without the permission of the owner.

3. anyone else who is entitled to recover damages because of bodily injury to any person protected by this coverage.

4. if **you** are an individual, anyone else while **occupying a non-owned auto we insure** other than:

   a. one **you** are using that is owned or leased by another person residing in **your** household.

   b. one furnished or available for the regular use of **you** or anyone residing in **your** household.

   c. One being operated by anyone other than **you** or a **relative.**

[Docket No. 14-3] Uninsured/Underinsured Motorists Coverage Endorsement – West Virginia, p. 2.  Based on the terms of the Erie Policy, underinsured motorists coverage is only provided to others we protect while occupying non-owned autos when **you**, or the Named Insured, *is an individual*.  Pison Management, LLC is not an individual, and, as such, underinsured motorists coverage is not extended to Non-Owned Autos under the Erie Policy.

### *Conclusion*

Defendant Cooper takes the untenable position in this matter that he was "using" the 2004 Chevrolet Silverado while he was a passenger in another vehicle owned by a third party.  The facts in this case demonstrate that Cooper was using the Huffman vehicle at the time of the accident.  To extend "use" of a vehicle to include the ability to use one vehicle while simultaneously using a separate vehicle when those vehicles are simply traveling on the highway to the same location

would obliterate the common understanding of the term "use" in the context of insurance coverage. While the *Cleaver* and *Keefer* cases extended the "use" doctrine to cases where individuals were outside of vehicles that had been occupied or were in the process of being occupied these cases did not extend the "use" doctrine to cases where an individual can claim use despite the fact that the individual is clearly engaged with and using a separate vehicle. The Defendant's position is wholly contrary to the purpose and intent of these cases. For those reasons, summary judgment should be granted in Erie's favor in this matter.

      **WHEREFORE**, for the reasons set forth herein and in its previously filed Motion for Summary Judgment, Erie respectfully requests that Defendant's Motion for Summary Judgment be denied, and that this Honorable Court grant Summary Judgment in Erie's favor and grant the declaratory relief sought by Erie in its Cross-Motion for Summary Judgment.

                                      **ERIE INSURANCE PROPERTY**
                                      **& CASUALTY COMPANY**

                                      **By Counsel**

      /s/ Matthew J. Perry
Matthew J. Perry, Esquire, WVSB #8589
James D. Lamp, Esquire, WVSB #2133
J. Jarrod Jordan, Esquire WVSB 10622
Lamp Bartram Levy Trautwein & Perry, PLLC
720 Fourth Avenue
P. O. Box 2488
Huntington, WV  25725-2488
(304) 523-5400
*Counsel for Erie Insurance Property*
*& Casualty Company*

**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON**

**ERIE INSURANCE PROPERTY
AND CASUALTY COMPANY,**

                **Plaintiff,**

**v.**                                      **CIVIL ACTION NO.:  2:20-CV-00321
The Honorable Irene C. Berger, Judge**

**JAMES SKYLAR COOPER,**

                **Defendant and Counterclaimant.**

**<u>CERTIFICATE OF SERVICE</u>**

       The undersigned counsel for Erie Insurance Property & Casualty Company, does hereby certify that service of the foregoing "**ERIE INSURANCE PROPERTY AND CASUALTY COMPANY'S RESPONSE IN OPPOSITION TO JAMES SKYLAR COOPER'S MOTION FOR SUMMARY JUDGMENT ON COUNTERCLAIM FOR DECLARATORY RELIEF**" has been made upon counsel of record via the Court's CM/ECF system on this the 2nd day of December, 2020, addressed as follows:

                Robert A. Campbell
                R. Chad Duffield
                Jennifer D. Roush
                FARMER CLINE & CAMPBELL, PLLC
                Post Office Box 3842
                Charleston, WV 25338

                           _____/s/ Matthew J. Perry_____
                        Matthew J. Perry, Esquire, WVSB #8589
                        James D. Lamp, Esquire, WVSB #2133
                        J. Jarrod Jordan, Esquire WVSB #10622

                        ***Counsel for Erie Insurance Property
                        & Casualty Company***