IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

**ERIE INSURANCE PROPERTY
AND CASUALTY COMPANY,**

**Plaintiff,**

**v.**                                                    **CIVIL ACTION NO.:  2:20-CV-00321**
                                                          **The Honorable Irene C. Berger, Judge**


**JAMES SKYLAR COOPER,**

**Defendant and Counterclaimant.**



ERIE INSURANCE PROPERTY AND CASUALTY
COMPANY'S REPLY IN SUPPORT OF
<u>ITS MOTION FOR SUMMARY JUDGMENT</u>

**NOW COMES** the Plaintiff, Erie Insurance Property & Casualty Company, (hereinafter "Erie"), by and through counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, respectfully submits this reply brief in support of its previously filed Motion for Summary Judgment.  As has now been made clear based on the parties' various briefs to the Court on this issue, there are no material issues of fact in dispute and Erie is entitled to judgment as a matter of law.

*Legal Argument*

The Defendant's response to Erie's Motion for Summary Judgment takes a shotgun approach in seeking to have this Court extend underinsured motorist coverage protection to the Defendant for the August 9, 2019 motor vehicle accident.  The Defendant asserts three primary arguments that have no legal support under West Virginia law which he articulates as the sole

issues to be decided by the Court.   First, Defendant seeks to have this Court find that the Defendant was using the 2004 Chevrolet Silverado, an owned auto under the Erie Policy, despite the fact that the undisputed facts in this case establish that the Defendant was occupying, using and traveling in a separate vehicle owned by Rick Huffman.   Second, the Defendant seeks to have this Court ignore the plain language of the Erie Policy and find that the Erie Policy provides underinsured motorist coverage to non-owned autos, including the Rick Huffman vehicle, despite the fact that the Erie Policy expressly does not extend underinsured motorist coverage to non-owned autos when the named insured is not an individual.   Third, the Defendant seeks to have this Court find that West Virginia Code 33-6-31 requires an insurer to offer underinsured motorist coverage to vehicles that are not owned or insured under the Erie Policy and that the failure to do so should result in a reformation of the Erie Policy, not only as to the coverages provided but also as to the individuals that are protected.

Taking each of these arguments separately, and ignoring Defendant's attempts to rely on unsupported factual assertions (like the assertion that Pison Management, LLC was not provided a commercially reasonable offer of underinsured motorist coverage and did not make a knowing and informed selection of coverage, an issue that has been wholly undercut by the affidavits of both Pison Management and its agent), each must fail based on a reading of the Erie Policy and application of West Virginia law.   For good reason, there are no cases cited by the Defendant that would support a finding that an individual can be using one vehicle, licensed in the state of West Virginia and insured under a wholly separate policy of insurance, and simultaneously be using a separate vehicle that is traveling ahead of him simply because the two vehicles are headed to the same destination.   To hold otherwise would completely obliterate the concept of use and the

2

requisite causal connection between the injuries sustained and the vehicle that West Virginia law clearly requires.

Likewise, Defendant's assertions that the Erie Policy should extend underinsured motorist coverage to non-owned autos ignores the unambiguous language of the Erie Policy in three respects. First, the Erie Policy expressly provides that underinsured motorists coverage is not provided to auto classifications where no premium charge is shown - no premium is charged for underinsured motorists coverage relative to non-owned autos. Second, the definition of "non-owned auto" in the Erie Policy expressly notes that its purpose is for "Employers Non-Ownership Liability" – this case does not involve liability coverage under the Erie Policy. Third, the express terms of the endorsement to the Erie Policy for uninsured and underinsured motorists coverage does not extend coverage to the Defendant as "Others We Protect" because he was using a non-owned auto and Pison Management, LLC is not an individual. The Defendant is not entitled to have the Erie Policy rewritten to remove these limitations that show a clear intent that underinsured motorists coverage, a wholly optional coverage available to Pison Management, LLC, was not intended to extend coverage to the Defendant while occupying and using a vehicle that Pison Management, LLC did not own.

Finally, in an apparent recognition that the Erie Policy, by its terms, does not provide underinsured motorists coverage to the Defendant while he was a passenger in the vehicle owned and operated by Rick Huffman, the Defendant makes the wholly unsupported assertion that West Virginia Code 33-6-31 requires an insurer to offer optional underinsured motorists coverage to a class of vehicles that are not even owned by the named insured. Through multiple cases, the West Virginia Supreme Court of Appeals has held that optional underinsured motorists coverage under West Virginia Code 33-6-31 is only intended to provide protection to the named insured and an

insurer, in accordance with West Virginia Code 33-6-31(k), can include terms, conditions and exclusions "as may be consistent with the premium charged."  In this case, no premium was charged for underinsured motorists coverage as it relates to non-owned autos, and the exclusion of underinsured motorists coverage for non-owned autos is wholly consistent with the lack of any premium charged.  The Defendant provides no legal support that West Virginia Code 33-6-31 requires offers of underinsured motorists coverage to non-owned autos and that argument is wholly inconsistent with clear West Virginia precedent.  To hold otherwise would require a finding that <u>multiple</u> offers of underinsured motorists coverage are required for certain vehicles, since the offer of underinsured motorists coverage for a non-owned auto is accomplished through the policy of insurance that actually insures the non-owned vehicle as a listed vehicle.  In other words, Rick Huffman, through his own policy of insurance, was provided an opportunity to select or reject underinsured motorists coverage for the vehicle that the Defendant was riding in, and his choice to reject that coverage does not provide any basis for the Defendant to transfer that obligation to Pison Management, LLC or Erie.

1.   **The Huffman Vehicle Is A Non-Owned Auto And The Erie Policy Does Not Extend Underinsured Motorist Coverage To Non-Owned Autos**

While the Defendant seems to acknowledge that the Erie Policy, by its terms, does not extend underinsured motorists coverage to non-owned autos, and instead focuses on an argument that he was in fact "using" the 2004 Chevrolet Silverado that was traveling ahead of him, it is important to note that any extension of underinsured motorists coverage to the Huffman vehicle, a non-owned auto, would require a rewriting of multiple aspects of the Erie Policy.

Since the Huffman vehicle is not a listed vehicle on the Erie Policy, any coverage available to the Huffman vehicle is limited to coverage provided by the Hired Auto (Auto 11) or Non-Owned

Auto (Auto 12) classifications.  The Erie Policy provides the following definitions of Hired Autos and Non-Owned Autos:

> **AUTOS WE INSURE**
>
> The **Declarations** shows which of the following are **autos we insure** under this policy:
>
> 2.   **Hired Autos**.  These are **autos you**, or **your** employee while on **your** business, hire, rent, or borrow for use in **your** business, but only for coverages for which a premium charge is shown.   They cannot be owned by **your** employees or partners, or members of their households.
>
> 3.   **Non-Owned Autos** (Employer's Non-Ownership Liability).  These are **autos you** do not own, hire, rent or borrow that are used in **your** business, but only for coverages for which a premium charge is shown.  This includes **autos** owned by **your** partners, employees or members of their households, but only while used in **your** business.

*Exhibit 3,* p. 5.

The Huffman vehicle does not qualify as a Hired Auto, because autos owned by employees are excluded from the definition of Hired Autos, and Huffman was an employee of Pison Management.  The Huffman vehicle does qualify as a Non-Owned Auto, which includes autos owned by employees.   Accordingly, any coverage for the Huffman vehicle under the Erie Policy is limited to coverage that is provided to Non-Owned Autos.  However, it is important to note that the definition of Non-Owned Autos clearly contemplates and identifies the type of coverage extended to that classification of auto and expressly states in its definition "(Employer's Non-Ownership Liability)".

The clear import of the inclusion of Employer's Non-Ownership Liability in the definition of Non-Owned Autos is that coverage for non-owned autos is intended to provide coverage to the employer, i.e. Pison Management, LLC, for potential <u>liability</u> that could arise from the use of a

non-owned auto.  If Rick Huffman, using his personally owned auto in the course and scope of his employment, had caused the August 9, 2019 motor vehicle accident, Pison Management, LLC would have potential vicarious liability for the actions of its employee in causing the accident.  The Erie Policy extends liability coverage for non-owned autos to protect Pison Management, LLC in those circumstances, and that protection is expressly contemplated through the definition's reference to "Employer's Non-Ownership Liability".  To find that the Erie Policy contemplated an extension of underinsured motorists coverage to non-owned autos, coverage that is not predicated on liability, would require the Court to ignore the language contained in the definition of a non-owned auto.[1]

Not only would the Court have to ignore a portion of the definition of non-owned autos in the Erie Policy to extend underinsured motorists coverage to non-owned autos, Item 5 of the Declarations expressly identifies the coverages provided for each classification of Autos under the Erie Policy.  Per the terms of the Declarations and the definition of Non-Owned Autos, the coverage provided is limited "to coverages for which a premium charge is shown."  [Document No. 14-3, page 5].  With respect to Non-Owned Autos, the Declarations of the Erie Policy only provides liability coverage, as that is the only type of coverage for which there is a premium charge.  *Id.*  No premium charge is listed for underinsured motorist coverage with respect to Non-Owned Autos, so that coverage is not provided with respect to the Huffman vehicle.  To reach the conclusion that underinsured motorists coverage is extended to non-owned autos would require

---

[1] Separately, it cannot be presumed that the employee is left without recourse for injuries sustained in the course and scope of employment, but that recourse is through Workers' Compensation coverage provided by the employer, and which the Defendant has pursued in this case.  In other words, optional underinsured motorists coverage is not the means by which an employer can provide access to compensation for work related injuries, and that fact undercuts any argument that public policy considerations mandate the extension of underinsured motorists coverage to non-owned autos used by employees in the employer's business operations.

the Court to wholly disregard the language in the Erie Policy that it only provides the coverages for which a premium charge is shown.

Underinsured motorists coverage is provided by way of endorsement to the Erie Policy. The insuring provisions for that coverage provides as follows:

### UNINSURED/UNDERINSURED MOTORISTS COVERAGE ENDORSEMENT – WEST VIRGINIA

### OUR PROMISE

**We** will pay damages for bodily injury and property damage that **you** or **your** legal representative are legally entitled to recover from the owner or operator of an **uninsured motor vehicle**. If Underinsured Motorists Coverage is indicated on the **Declarations, we** will pay damages for bodily injury and property damage that **you** or **your** legal representative are legally entitled to recover from the owner or operator of an **underinsured motor vehicle**.

Damages must result from a motor vehicle accident arising out of the ownership or use of the **uninsured motor vehicle** or **underinsured motor vehicle** as a motor vehicle and involve:

1. Bodily injury to **you** or others **we** protect. Bodily injury means physical harm, sickness, disease or resultant death to a person; or

2. Property damage, meaning destruction of or injury to:

   a. An **owned auto we insure** and property owned by **anyone we protect** while contained in such **auto;**

   b. Property owned by **you** or a **relative** while contained in any **auto we insure** under this coverage; and

   c. Any other property (except a **motor vehicle**) owned by **anyone we protect** and located in West Virginia.

   If loss results in an Uninsured or Underinsured Motorists Property Damage claim, **we** will pay **you** the greater of the fair market rental value of a like kind replacement vehicle or the amount to which **you** are entitled under Transportation Expenses Coverage, if purchased.

7

**We** will not be bound by a judgment against the owner or operator of the **uninsured motor vehicle** or **underinsured motor vehicle** on issues of liability or amount of damages unless it is obtained with **our** written consent.

[Document 14-3, Uninsured/Underinsured Motorists Coverage Endorsement – West Virginia, p. 1].

For bodily injury, the insuring provisions for Uninsured/Underinsured Motorists Coverage is limited to "you" or "others we protect".[2]  "You" is defined by the Erie Policy as follows:

### ADDITIONAL ERIE INSURANCE COMPANY AND ERIE INSURANCE PROPERTY AND CASUALTY COMPANY DEFINITIONS

**"you", "your"** and **"Named Insured"** means the person(s) or organization(s) named in Item 1 on the **Declarations.**  Except in the **RIGHTS AND DUTIES – GENERAL POLICY CONDITIONS** Section, these words include **your** spouse if a resident of the same household.

[Document 14-3, Declarations, Item 1].  The Erie Policy lists Pison Management, LLC as the Named Insured.  *Id.*  Cooper is not a Named Insured and does not qualify as "you" under the Erie Policy.

Uninsured/Underinsured Motorists Coverage is also extended to OTHERS WE PROTECT for purposes of bodily injury.  Specifically, the UM/UIM endorsement provides:

### OTHERS WE PROTECT

**We** also protect:

1.  any **relative** if **you** are an individual.

---

[2] While Defendant's Response seems to stress the importance of Erie's definition of "anyone we protect" the UM/UIM endorsement does not extend underinsured motorists bodily injury coverage to "anyone we protect" but instead provides underinsured bodily injury liability coverage to **you** and **others we protect** which is separately defined by the endorsement.  Defendant's references to "anyone we protect" is simply a red herring.

2. anyone else, while **occupying** any **owned auto we insure** other than an **owned auto we insure** being used without the permission of the owner.

3. anyone else who is entitled to recover damages because of bodily injury to any person protected by this coverage.

4. if **you** are an individual, anyone else while **occupying a non-owned auto we insure** other than:

   a. one **you** are using that is owned or leased by another person residing in **your** household.

   b. one furnished or available for the regular use of **you** or anyone residing in **your** household.

   c. One being operated by anyone other than **you** or a **relative.**

[Document 14-3, Uninsured/Underinsured Motorists Coverage Endorsement – West Virginia, p. 2].  Based on the terms of the Erie Policy, underinsured motorists coverage is only provided to others we protect while occupying non-owned autos when you, or the Named Insured, *is an individual*.  Pison Management, LLC is not an individual, and, as such, underinsured motorists coverage is not extended to Non-Owned Autos under the Erie Policy.

To find that underinsured motorists coverage is extended to non-owned autos and the Defendant's claims in this case would require rewriting or ignoring three separate provisions of the Erie Policy which are contrary to Defendant's assertions in this case.  The Court would have to disregard a portion of the definition of non-owned autos, which expressly references "Employer's Non-Owned Liability".  The Court would have to disregard the language of the Erie Policy that limits coverage to those coverages for which a premium charge is shown and the fact that no premium was charged for underinsured motorists coverage for non-owned autos.  And, the Court would have to disregard the fact that Pison Management, LLC is not an individual in order

to find that the Defendant qualifies as "Others We Protect" for purposes of non-owned autos underinsured motorists coverage.  For all three, and any of the three, foregoing reasons, the Erie Policy does not extend underinsured motorists coverage to the Defendant while he was occupying the non-owned auto that Rick Huffman owned and operated at the time of the motor vehicle accident.

### 2.   Defendant Was Not "Using" An Owned Auto At The Time Of The Accident

The Erie Policy in this case clearly establishes that underinsured motorist coverage is only extended to auto classifications for which there is a premium charge for underinsured motorist coverage.  The Erie Policy in this case also clearly establishes that premium for underinsured motorist coverage was only charged for the two Pison Management vehicles that were specifically listed on the Declarations.  In other words, underinsured motorist coverage is only provided when the injuries arise from the use of an Owned Auto.  While the issue of "use" of an Owned Auto has been extensively and thoroughly briefed by all parties in this case, what remains to be said is that basic logic dictates a finding that the Defendant was not using a vehicle other than the one he was traveling in at the time of the accident.

The cases that have considered "use" outside of actual occupancy and operation of a vehicle have one common thread:  each of those cases involve factual scenarios where the injured party was outside of any motor vehicle – hence the West Virginia Supreme Court of Appeals' reference to this line of cases as "disembarkation cases".  *See Cleaver v. Big Arm Bar & Grill, Inc.,* 202 W. Va. 122, 125, 502 S.E.2d 438, 441 (1998).  The parties can certainly agree that West Virginia has recognized that "use" of a vehicle can be broader than occupancy or operation, but the extension of use has never been extended to use of multiple motor vehicles at one time, especially when the injured party is occupying and actively traveling in one of the two vehicles.

At best, Defendant can point to the facts of *Keefer v. Ferrell*, 221 W. Va. 348, 655 S.E.2d 94 (2007), a per curiam decision of the West Virginia Supreme Court of Appeals, for the strained argument of use in this case, but the *Keefer* decision is easily distinguishable on its face.  *Keefer* involved the active loading of a farm tractor onto the bed of the truck at issue.  The farm tractor was not a separate motor vehicle, required to be registered and insured for use on roads in West Virginia and the farm tractor was not simply traveling down the highway, following the truck that Mr. Keefer was found to have been using at the time of his accident.  Instead, the causal connection between the farm tractor and the truck was predicated on a finding that the farm tractor was being loaded onto the bed of the truck and Mr. Keefer's operation of the tractor at the time of the accident arose solely from the necessity that he operate the tractor in order to place it on the bed of the truck.  The *Keefer* decision provides no support for the proposition that the Defendant was using a separately insured vehicle that was traveling ahead of him while he was an occupant of the Huffman vehicle.

The term "use" is broader than occupancy or operation, but the plain meaning of the word and the interpretation of that word by the West Virginia Supreme Court of Appeals still means that there has to be some causal connection between the injured party and the vehicle at issue, such that there can be a finding that the injuries were "foreseeably identifiable with the normal use of the vehicle." *Keefer v. Ferrell*, 221 W. Va. 348, 352, 655 S.E.2d 94, 98.  While the Defendant asserts that the test is simply "whether or not the injury originated in, grew out of, or flowed from the use of the vehicle", the Court in *Keefer* clearly contemplated a more causative relationship. [Document 18, page 10].[3]  Specifically, what the Court held in *Keefer* was:

---

[3] In fact, the language cited by the Defendant was actually a cite to a decision by the Colorado Court of Appeals in *McMichael v. Aetna Ins. Co.*, 878 P.2d 61 (Colo. Ct App. 1994).  This standard arguably runs afoul of the specific holding in *Keefer* that more than "but for" causation is required to establish a requisite causal connection.

> When . . . the "use" of a vehicle is a question for insurance purposes due to the separation of an individual from a vehicle at the time of an accident, the court must determine whether there is a causal connection between the motor vehicle and the injury." Additionally, the [']causal connection must be "more than incidental, fortuitous, or but for.[']" *See Baber v. Fortner [by Poe],* 186 W. Va. 413, 417[, 412 S.E.2d 814, 818] (1991); *Nationwide Mutual Insurance Co. v. Shumate,* 63 F. Supp. 2d 745 [(S.D. W. Va. 1999)]. Essentially, the injury must be foreseeably identifiable with the normal use of the vehicle.
>
> *Keefer v. Ferrell*, 221 W. Va. 348, 352, 655 S.E.2d 94, 98 (2007) (emphasis in underline added).

The ultimate question for the Court in this case is whether the Defendant's injuries were causally connected to the 2004 Chevrolet Silverado that was traveling ahead of him. Defendant's arguments are based on the assertion that "but for" the fact that the vehicles were traveling to the same location, the Defendant's injuries would not have occurred. But, as *Keefer* clearly demonstrates, "but for" causation is simply not enough. The facts in this case show that the Defendant's injuries were causally connected to the Huffman vehicle, not the 2004 Chevrolet Silverado traveling ahead of him, and Defendant's injuries occurred because he was occupying and using the vehicle in which he was riding and which was struck by the vehicle operated by Thelma White. In other words, the injuries to the Defendant in this case could have, and would have, occurred even if the 2004 Chevrolet Silverado were not traveling in front of him, and that fact is fatal to the Defendant's claim of use of that vehicle in this case.

### 3. Defendant's Challenge To Erie's Offer Of Underinsured Motorist Coverage Fails Both Factually And Legally

Defendant's final argument for underinsured motorists coverage is wholly premised on his assertion that Pison Management, LLC did not receive a commercially reasonable offer of underinsured motorists coverage and did not make a knowing and informed selection of that coverage. Coupled with that argument is the bald assertion that insurers are required to offer

12

underinsured motorists coverage for non-owned autos when liability coverage is provided for that auto classification.  Based on these assertions, the Defendant seeks to have this Court reform the Erie Policy beyond anything contemplated by *Bias v. Nationwide*, 179 W. Va. 125, 365 S.E.2d 789 (1987), to create underinsured motorists coverage for a class of autos that the insured does not own, where no premium was charged for that type of coverage, and to ignore the terms of the UM/UIM endorsement which does not extend underinsured motorists coverage to non-owned autos when the insured is not an individual.  The *Bias* decision stands for the proposition that a Court can increase the limits of underinsured motorists coverage to an amount equal to liability limits when there is not an effective offer of that coverage, but the *Bias* decision provides no support for the proposition that a Court can extend underinsured motorists coverage to non-owned autos, especially when doing so would be wholly inconsistent with the other terms and conditions of the Erie Policy.

Factually, the Defendant makes a number of assertions that are simply incorrect and unsupported.  First, the Defendant asserts that there is no evidence upon which Erie can rely that it made a commercially reasonable offer or that Pison Management, LLC made a knowing and informed selection of underinsured motorists coverage.  Those assertions have been wholly undercut by the affidavits from Lisa White, the insurance agent for Pison Management, LLC, and by Pison Management, LLC itself, through the affidavits attached to Erie's Response to Defendant's Motion for Summary Judgment.  Both affidavits establish that the evidence in this case is that Pison Management, LLC was fully informed as to the purpose of underinsured motorists coverage, the various levels of coverage that could be purchased and the premium charges related to each level of coverage offered. *See Exhibits 1 and 2 to Erie's Response to Defendant's Motion for Summary Judgment* [Document 19-1 and 19-2].  As set forth in *Bias*, this

evidence provided by way of affidavits is exactly the type of evidence required for Erie to meet is burden even if Erie were not entitled to the statutory presumption provided by West Virginia Code 33-6-31d and as recognized in *Thomas v. McDermitt*, 231 W. Va. 660, 749 S.E.2d 352 (2013); *see also Martin v. State Farm Mut. Auto Ins. Co.*, 809 F.Supp.2d 496 (S.D. W. Va. 2011).

Additionally, Defendant's claims of an ineffective offer are premised on selection/rejection forms that were superseded by subsequent forms executed by Pison Management, LLC when it increased its limits of coverage from $500,000 to $1,000,000. Rather than concede that fact, Defendant now asserts that the new forms are also defective because it lists only one vehicle instead of two vehicles. However, Defendant makes that assertion without any supporting evidence and provides no support for the assertion that there was more than one vehicle insured under the Erie Policy at the time that new forms were executed. While Defendant also contests the validity of the forms because of the lack of a date, Pison Management, LLC has confirmed by way of affidavit that the forms were signed in March 2016. The Defendant, as a third party to the insurance contract, has no factual basis to contest the selection of underinsured motorists coverage in this case when the named insured has expressly stated under oath that the selection of underinsured motorists coverage was knowing and informed.

Legally, Defendant's claims for an extension of the law relative to offers of underinsured motorists coverage also lack any support. The Defendant, without any supporting precedent, makes the unsubstantiated claim that, when liability coverage is offered under a policy of insurance for a class of non-owned autos, there is accompanying obligation to offer underinsured motorists coverage to that class of non-owned autos. Not only does this assertion lack support, it also conflicts with West Virginia Code 33-6-31. While the Defendant makes the conclusory assertion that West Virginia Code 33-6-31(b) "requires that every insurer providing liability insurance on a

vehicle in West Virginia must also provide an option for the insured to purchase underinsured motorist coverage for that vehicle . . . .", that is not what the statute says. [Document 18, page 14]. Rather, West Virginia Code 33-6-31(a) addresses the requirements for liability coverage and West Virginia Code 33-6-31(b) addresses uninsured and underinsured motorists coverage.

By its express terms, West Virginia Code 33-6-31(a) only addresses requirements relating to liability coverage for vehicles that are <u>owned</u>.  Specifically, West Virginia Code 33-6-31(a) states:

> (a) No policy or contract of bodily injury liability insurance, or of property damage liability insurance, covering liability arising from the ownership, maintenance or use of any motor vehicle, may be issued or delivered in this state to the **<u>owner</u>** of such vehicle . . . .

> W. Va. Code § 33-6-31 (emphasis added).

While subsection (a) goes on to clarify that to the extent that liability coverage is offered for the use of a non-owned automobile which must be conditioned upon consent of the owner, owner is to be construed as including the custodian of such non-owned motor vehicles, that component of the statute has no corresponding obligation to extend liability coverage to non-owned autos.[4]  *Id.* At no point does West Virginia Code 33-6-31(a) mandate the extension of coverage for non-owned autos and only requires the offer of liability coverage to the <u>owner</u> of the vehicle.

More importantly, West Virginia Code 33-6-31(b) makes no reference to non-owned autos and does not tie the offer of underinsured motorists coverage to a vehicle, or class of vehicles, but rather to the insured.  While the offer of underinsured motorists coverage pursuant to West Virginia Coad 33-6-31(b) is tied to the issuance of a liability policy, liability policies in West Virginia are

---

[4] Reference to non-owned automobiles in this statutory section only involves permissive use of the non-owned automobile and clarifies that permissive use can be provided by the consent of the owner or the custodian of that non-owned automobile.  This has no bearing on the issues before the Court in this case.

necessarily issued to the <u>owners</u> of those vehicles – not non-owned autos.[5]  Consistent with this

fact, the West Virginia Supreme Court of Appeals has repeatedly held that an insurer may include

exclusions to underinsured motorists coverage that are consistent with the premium charged in

accordance with West Virginia Code 33-6-31(k), which provides,

> (k) Nothing contained herein prevents any insurer from also offering
> benefits and limits other than those prescribed herein, nor does this
> section prevent any insurer from incorporating in such terms,
> conditions and exclusions as may be consistent with the premium
> charged.
>
> W. Va. Code § 33-6-31

In this case, Erie did not charge any premium for underinsured motorists coverage relative to non-

owned autos, entirely consistent with West Virginia Code 33-6-31(k).

In *Deel v. Sweeney*, the West Virginia Supreme Court of Appeals addressed whether an

insurer could appropriately exclude underinsured motorists coverage for an accident that occurred

while the injured party was operating a vehicle that was not a listed vehicle under the applicable

policy of insurance.  *Deel v. Sweeney*, 181 W. Va. 460, 383 S.E.2d 92 (1989).  In *Deel*, the

insured's son, Johnny Deel, was operating a vehicle that he owned when he was struck by another

vehicle, resulting in injury.  After recovering the liability limits from the tortfeasor's vehicle,

Johnny Deel sought underinsured motorists coverage under his father's policy because Johnny

Deel's own policy did not provide underinsured motorists coverage and he resided in his father's

household.  In denying Johnny Deel's claim for underinsured motorists coverage, the insurer relied

---

[5] In his Response, Defendant notes that offers of underinsured motorists coverage are guided by Informational Letter No. 121, which provides the prescribed forms for an effective offer.  It is noteworthy that that the form requires the identification of the specific number of vehicles subject to the offer.  It begs the question how an insurer would accurately complete that component of the form if there was a required offer for a "class" of non-owned vehicles and further reinforces the fact that offers of underinsured motorists coverage are tied to listed vehicles and does not require an offer of coverage for non-owned autos.

on an owned but not insured exclusion, which excluded underinsured motorists coverage for vehicles owned by the insured or a relative but not insured for underinsured motorists coverage under the policy.  A declaratory judgment action ensued and the trial court determined that Johnny Deel was not entitled to underinsured motorists coverage under his father's policy based on the owned but not insured exclusion.

On appeal, the West Virginia Supreme Court of Appeals affirmed a finding of no coverage for Johnny Deel.  Finding the owned by not insured exclusion to be unambiguous, the Court noted that the only issue was whether the exclusion violated the purpose and intent of West Virginia Code 33-6-31.  In finding the exclusion valid and enforceable, the Court distinguished the difference between mandatory uninsured motorists coverage and optional underinsured motorists coverage, noting the legislature's clear intent to allow insurers to incorporate exclusions for underinsured motorists coverage pursuant to West Virginia Code 33-6-31(k).  The Court states, "The above statutory changes [referencing WV Code 33-6-31(k)] indicate that the Legislature does not view uninsured and underinsured coverage in the same light.  Uninsured motorist coverage is required, while underinsured motorist coverage is optional." *Deel v. Sweeney*, 181 W. Va. 460, 463, 383 S.E.2d 92, 95.  The Court concludes,

> The purpose of optional underinsured motorist coverage is to enable the insured to protect himself, if he chooses to do so, against losses occasioned by the negligence of other drivers who are underinsured.

*Id.; see also Alexander v. State Auto Mutual Insurance Company*, 18 W. Va. 72, 415 S.E.2d 618 (1992).

What becomes readily apparent from a reading of West Virginia Code 33-6-31 and the *Deel* case is that there is no statutory or public policy mandate that an insurer be required to offer optional underinsured motorists coverage to a class of vehicles that are not owned by the insured.

In *Deel*, the West Virginia Supreme Court of Appeals affirmed an insurer's ability to exclude underinsured motorists coverage to a vehicle that was not a listed vehicle on the applicable policy. Those circumstances are the same here.

Rather, when an insured purchases a liability policy for an auto that he or she owns, the insurer is required to offer <u>the insured</u> the option to purchase underinsured motorist coverage. Aside from requiring the offer to be up to an amount equal to liability limits, West Virginia Code 33-6-31 is wholly silent on how that underinsured motorists coverage is to be provided. It certainly does not mandate extending or offering underinsured motorists coverage to vehicles that are not owned by the insured and West Virginia law clearly establishes that there is no public policy that requires otherwise.

Whereas liability coverage is mandated and intended to provide a level of protection to other drivers in the state of West Virginia, optional underinsured motorist coverage is a means by which the insured can protect himself or herself. An insurer is entitled to limit and exclude the application of underinsured motorists coverage pursuant to West Virginia Code 33-6-31(k), as long as the exclusions are consistent with the premium charged. In this case, the Erie Policy charged no premium as it relates to underinsured motorist coverage for non-owned autos. The Erie Policy's exclusion with respect to that coverage is entirely consistent with the choice not to charge any premium. The *Deel* case, which excluded underinsured motorist coverage for a motor vehicle accident involving a car not insured under the applicable policy, wholly supports Erie's ability to limit or exclude underinsured motorists coverage as it relates to non-owned autos.

**WHEREFORE**, for the reasons set forth herein and in Erie's previously filed Motion for Summary Judgment, Erie respectfully requests that this Honorable Court grant Summary Judgment in its favor and declare as follows:

A.   That, based on the language of the Erie Policy, underinsured motorists coverage is not provided for non-owned autos.

B.   That, based on the language of the Erie Policy, Cooper does not qualify as "you" or "others we protect" for purposes of underinsured motorists coverage.

C.   That based on the language of the Erie Policy, Cooper was not "using" a vehicle insured for underinsured motorist coverage under the Erie Policy issued to Pison Management at the time of the August 9, 2019 motor vehicle accident;

D.   That based on the language of the Erie Policy, Cooper is not entitled to underinsured motorists coverage under the Erie Policy issued to Pison Management.

E.   Erie Insurance Property & Casualty Company also requests any such other and further relief as this Court deems just and appropriate.

**ERIE INSURANCE PROPERTY & CASUALTY COMPANY**

**By Counsel**

_____/s/ Matthew J. Perry_____
Matthew J. Perry, Esquire, WVSB #8589
James D. Lamp, Esquire, WVSB #2133
J. Jarrod Jordan, Esquire WVSB 10622
Lamp Bartram Levy Trautwein & Perry, PLLC
720 Fourth Avenue
P. O. Box 2488
Huntington, WV  25725-2488
(304) 523-5400
*Counsel for Erie Insurance Property*
*& Casualty Company*

**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON**

**ERIE INSURANCE PROPERTY
AND CASUALTY COMPANY,**

        **Plaintiff,**

**v.**                                   **CIVIL ACTION NO.:  2:20-CV-00321
The Honorable Irene C. Berger, Judge**

**JAMES SKYLAR COOPER,**

        **Defendant and Counterclaimant.**

**<u>CERTIFICATE OF SERVICE</u>**

        I, MATTHEW J. PERRY, counsel for Erie Insurance Property & Casualty Company, do hereby certify that service of the foregoing "**ERIE INSURANCE PROPERTY AND CASUALTY COMPANY'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**" has been made upon counsel of record via the Court's CM/ECF system on this the 16th day of December, 2020, addressed as follows:

                              Robert A. Campbell
                              R. Chad Duffield
                              Jennifer D. Roush
                              FARMER CLINE & CAMPBELL, PLLC
                              Post Office Box 3842
                              Charleston, WV 25338

_____/s/ Matthew J. Perry_____
Matthew J. Perry, Esquire, WVSB #8589
James D. Lamp, Esquire, WVSB #2133
J. Jarrod Jordan, Esquire WVSB #10622
Lamp Bartram Levy Trautwein & Perry, PLLC
740 Fourth Avenue
P. O. Box 2488
Huntington, WV  25725-2488
(304) 523-5400
*mperry@720legal.com*
*jlamp@720legal.com*
*Counsel for Erie Insurance Property and Casualty Company*