IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

**ERIE INSURANCE PROPERTY
& CASUALTY COMPANY,**

      **Plaintiff,**

v.                                      **CIVIL ACTION NO.: 2:20-cv-00321
HONORABLE IRENE C. BERGER**

**JAMES SKYLAR COOPER,**

      **Defendant and Counterclaimant.**

**REPLY MEMORANDUM TO ERIE PROPERTY AND CASUALTY COMPANY'S
RESPONSE IN OPPOSITION TO JAMES SKYLAR COOPER'S MOTION FOR
<u>SUMMARY JUDGMENT ON COUNTERCLAIM FOR DECLARATORY RELIEF</u>**

      Now comes the Defendant and Counterclaimant, James Skylar Cooper, and in reply to *Erie Insurance Property and Casualty Company's Response In Opposition to James Skylar Cooper's Motion for Summary Judgment on Counterclaim for Declaratory Relief ("Erie's Response")*, ECF 19, provides the following memorandum of law.

<u>**SUMMARY OF REPLY**</u>

      Erie is wrong in asserting there are no cases in West Virginia that have extended "use" to the type of factual scenario presented in this case. *Erie's Response*, p. 1-2, ECF 19. Erie is also wrong in implying that physical contact is required and in concluding that Mr. Cooper's use of the insured vehicle had ended at the time of the crash. *Erie's Response*, pp. 2,11, ECF 19. Additionally, the newly discovered underinsured motorist coverage ("UIM Coverage") selection form and the affidavits that were attached to *Erie's Response* fall far short of meeting Erie's burden of proving that it made a commercially reasonable offer of UIM Coverage for non-owned vehicles.

For the reasons contained in *"James Skylar Cooper's Motion for Summary Judgment on Counterclaim for Declaratory Relief"*("Motion"), ECF 16, the *"Memorandum of Law in Support of James Skylar Cooper's Motion for Summary Judgment on Counterclaim for Declaratory Relief "("Memorandum of Law")*, ECF 17, and as set forth below, Mr. Cooper requests his Motion be granted, *"Erie Insurance Property and Casualty Company's Motion for Summary Judgment,"* ECF 14, be denied, and the Court declare that Mr. Cooper is entitled to the UIM coverage under the Erie insurance policy both for his use of an owned auto and for his occupancy and use of a non-owned auto.

## ARGUMENT

I. **A FINDING OF USE IN THIS CASE IS NOT AN EXPANSION OF THE LAW, BUT RATHER AN APPLICATION OF LONG-STANDING LEGAL PRECEDENT SET BY THE SUPREME COURT OF APPEALS OF WEST VIRGINIA.**

*Erie's Response* implies that the only way this Court can find that Mr. Cooper was using the 2004 Chevrolet is to expand West Virginia law and find, for the first time, that a person can be using one vehicle while "simultaneously using a separate vehicle." *Erie's Response*, p. 1-2, ECF 19. This conclusion is wrong as the Supreme Court of Appeals of West Virginia recognized, more than thirteen years ago, that a person can be using a vehicle while engaged with and riding on a completely different vehicle. *See Keefer v. Ferrell*, 221 W.Va. 348, 655 S.E.2d 94 (W.Va. 2007)(per curium).

In the *Keefer* case, Mr. Keefer was operating a farm tractor on a public roadway when he was struck from behind by another vehicle. *Keefer*, 221 W.Va. 348, 351, 655 S.E.2d 94, 97. Mr. Keefer was driving the tractor to a location where he planned to load it onto a trailer being towed by a truck. *Id.*, 221 W.Va. at 354, 655 S.E.2d at 100. The truck was parked and under the control of another person. *Id.* At the time of the collision, the

2

tractor had not reached the truck and trailer, but was twenty-five to thirty feet away. *Id.* Despite the fact that the tractor driver was occupying and using the tractor, the Supreme Court of Appeals found that Mr. Keefer was also using a completely different vehicle – the truck. *Id.* This is the same situation here, which Erie fails to acknowledge. Thus, contrary to Erie's claim that Mr. Cooper is seeking an expansion of the law, this Court need only apply the law in the same manner as the Supreme Court did in *Keefer* – the Court should find that Mr. Cooper was using the 2004 Chevrolet, while riding in another vehicle and while someone else was actually operating the 2004 Chevrolet.

II.  **ERIE MISAPPLIES THE *CLEAVER* FACTORS IN CONCLUDING MR. COOPER WAS NOT USING THE 2004 CHEVROLET AT THE TIME OF THE CRASH.**

Erie claims that it is undisputed that Mr. Cooper had "no physical contact with the 2004 Chevrolet that he claims he was using." *Erie's Response*, p. 2, ECF 19. While Erie's statement is true, the fact is that physical contact is not required. *See Cleaver v. Big Arm Bar & Grill, Inc.*, 202 W.Va. 122, 502 S.E.2d 438 (W.Va. 1998). *See also Keefer*, 221 W.Va. at 355, 655 S.E.2d at 101. The factor is "proximity" and as set forth in Mr. Cooper's *Memorandum of Law* supporting his *Motion*, he was in reasonably close proximity to the 2004 Chevrolet at the time of the collision. *See Memorandum of Law*, p. 13-14, ECF 17, *citing* Cooper 28, ECF 16-1. Given that courts have considered twenty-five to thirty feet "reasonably close," it is clear that the proximity factor favors a finding that Mr. Cooper was using the 2004 Chevrolet, despite him not being in physical contact with it.[1]

---

[1] *See Keefer*, 221 W.Va. at 355, 655 S.E.2d at 101; *Great American Ins. Co. v. Cassell*, 239 Va. 421, 389 S.E.2d 476 (Va., 1990) (finding use where injured person was twenty to twenty-five feet away from vehicle); *Simpson v. United States Fidelity & Guar. Co.*, 562 N.W.2d 627, 631 (Iowa, 1997) (twenty feet was close proximity); *Oberkramer v. Reliance Ins. Co.*, 650 S.W.2d 300, 301 (Mo. App. E.D.,1983) (finding use when injured person was between 25 and 50 feet away from the vehicle); *Hartford Acc. Indem. Co. v. Booker*, 140 Ga.App. 3, 4, 7, 230 S.E.2d 70, 71, 73 (Ga. App., 1976) (injured party was thirty feet away from the vehicle).

3

Erie claims that if the Court were to find use in this case, "[u]se could be found for every vehicle that happened to be in proximity to the vehicle occupied." *Erie's Response*, p. 7, ECF 19. Erie's exaggeration fails to recognize that Mr. Cooper is not claiming use simply based on his physical proximity to the 2004 Chevrolet. He is claiming use based on the undisputed evidence that he and Mr. Huffman were using the 2004 Chevrolet to transport their grass cutting equipment to a job site, and to lead them to the job site. Mr. Cooper has not asserted that he is entitled to coverage through any other vehicle in the caravan. To get coverage through those vehicles, Mr. Cooper would have to be "using" or "occupying" those vehicles.[2] Erie's concern is illusory. This Court's finding that Mr. Cooper was using the 2004 Chevrolet will not open the door for others to claim use of any vehicle in close proximity – the test will remain as it has been for more than twenty years.

Erie wants to characterize Mr. Cooper's use as being complete at the time of the collision because if it acknowledges that Mr. Cooper's use was ongoing, then there certainly was a causal relationship between his use of the vehicle and his injury. As demonstrated by the testimony, Mr. Cooper had not yet made it to the job site. *Cooper*, 16-18, 30, Ex. 1 to ECF 16. Thus, his use had not ended.[3] His use, like Mr. Keefer's use, was

---

[2] Erie's exaggeration continues in footnote 1 of *Erie's Response* when Erie hypothetically surmises that if there was a traffic jam, an occupant of one vehicle could claim he or she was using all of the vehicles in close proximity. *Erie's Response*, p. 7, fn. 1, ECF 19. Again, Erie fails to recognize that Mr. Cooper is not claiming use of random vehicles that have no relation to the purpose of his travel. The test is whether his injury originated in, grew out of, or flowed from his use of the vehicle. *Adkins v. Meador*, 201 W.Va. 148, 156, 494 S.E.2d 915, 923 (W.Va. 1997) At the time of the collision, Mr. Cooper was actively engaged in transactions directly related to his use of the 2004 Chevrolet. His injuries "originated in, grew out of, and flowed from" his use. *Adkins, 201 W.Va. at 156, 494 S.E.2d at 923.*

[3] Hypothetically, if Mr. Cooper had made it to the job site, completed his work, and was headed home, as opposed back to the shop to unload equipment, the situation would be different. His use of the equipment would have ended. Under that hypothetical, if the same crash occurred, Mr. Cooper's claim of use should then fail.

4

ongoing. *Keefer*, 221 W.Va. at 352, 655 S.E.2d at 98. Further, at the time of the collision, Mr. Cooper was actively engaged in transactions directly related to his use of the 2004 Chevrolet. The vehicle was being used to transport equipment and lead employees to a job site. *Cooper*, 32-34, ECF 16-1. That is exactly what Mr. Cooper was using the 2004 Chevrolet for at the time of the collision. Thus, his injuries "originated in, grew out of, and flowed from" his use. *Id.*

Just as the Court in *Keefer* found that the tractor operator (who had not even made it to the truck and trailer) was engaged in a use that was "causally connected to the use of the" truck, so too was Mr. Cooper's use of the 2004 Chevrolet. *Keefer*, 221 W.Va. at 356, 655 S.E.2d at 102. Moreover, just as the Court in *Keefer* found that it was foreseeable that injuries may occur during the loading process (even though Mr. Keefer had not made it close enough to load at the time), so too was it foreseeable that a work truck used to transport equipment and navigate workers to job sites on the public roads would become involved in a collision employees would be injured.

### III. ERIE'S AFFIDAVITS FAIL TO DEMONSTRATE ERIE MADE A COMMERCIALLY REASONABLE OFFER OF UIM COVERAGE FOR NON-OWNED VEHICLES.

Erie has now produced affidavits and newly discovered forms on which it relies to summarily conclude that a commercially reasonable offer of UIM coverage was made. *See Erie's Response*, pp. 13-16, ECF 19. However, Erie continues to misunderstand the significance of its decision to provide liability coverage to non-owned vehicles, like Mr. Huffman's vehicle. *West Virginia Code* §33-6-31 requires an insurer to offer UIM coverage for every vehicle to which it provides liability coverage. In this case, Erie agreed to provide liability coverage for two owned vehicles, but also to non-owned vehicles. *See* ECF 16-4. As a result, Erie was required to make an offer of UIM coverage for those vehicles.

5

Erie cites to *Deel v. Sweeney* in an apparent attempt to avoid its obligation to provide a UIM coverage offer for non-owned vehicles. *See Deel v. Sweeney*, 181 W.Va. 460, 462, 383 S.E.2d 92, 94 (W.Va. 1989). However, there is a monumental difference between the facts of *Deel* and the facts here, which make all the difference. In *Deel*, the father's insurer chose not to insure the son's vehicle under the policy. *Deel*, 181 W.Va. at 462, 383 S.E.2d 92, 94 ("The automobile owned and operated by the appellant was not an insured vehicle under this policy"). The same cannot be said about Mr. Huffman's vehicle. Erie chose to insure Pison's non-owned vehicles, like Mr. Huffman's vehicle, which is what triggers the obligation to offer UIM coverage for non-owned vehicles. See *West Virginia Code*, §33-6-31.

The newly discovered form (which only provides UIM coverage offers for one vehicle) and the affidavits (which do not reach the issue of whether UIM coverage for non-owned vehicles was discussed)[4] do not meet Erie's burden of proving that an offer of UIM coverage was made for the non-owned vehicles and that Pison knowingly and intelligently rejected the coverage. As indicated on the form, the UIM coverage offer was made for one vehicle. *See* ECF 19-2, page 5 of 6. Further, the fact that the form indicates that no multi-car discount was applied also confirms that coverage was only offered for one vehicle. *Id.* Erie's forms and affidavits do nothing to prove that Erie offered UIM coverage to Pison for the non-owned vehicles for which the policy provided liability coverage. Ms. White's affidavit does not state that she discussed UIM coverage for non-owned vehicles with Pison. *See* ECF 19-1. The affidavit from Pison's owner, Mr. Turner, likewise, does not say

---

[4] When examined closely, the affidavits attached to Erie's Response do not specify that UIM coverage for non-owned coverage was specifically discussed. *See* ECF 19-1 and 19-2.

6

that he intended to reject UIM coverage for non-owned vehicles.[5] *See* ECF 19-2. The affidavits and newly discovered forms are simply window dressings which attempt to conceal the fact that Erie chose to insure non-owned vehicles, but never made an offer of UIM coverage for those vehicles.

When an insurer is required by statute to offer optional coverage, it is included in the policy by operation of law when the insurer fails to prove an effective offer and a knowing and intelligent rejection by the insurer. *Riffle v. State Farm Mut. Auto. Ins. Co.*, 186 W.Va. 54, 55, 410 S.E.2d 413, 414 (1991) (citing Syl pt. 2, *Bias v. Nationwide Mutual Insurance*, 179 W.Va. 125, 365 S.E.2d 789). The fact that Erie did not charge a premium or attempted to limit coverage with an exclusion in the Policy has nothing to do with the threshold question as to whether or not Erie made an commercially reasonable and effective offer of UIM coverage, which is Erie's burden to prove. Erie has not cited to a single authority for the proposition that failing to charge a premium or burying language in a policy excluding UIM coverage is sufficient to meet its burden of making an offer of UIM coverage that is definite, intelligible, and specific in terms of the nature of the coverage offered and the accurate costs or rate calculation. Mr. Cooper is entitled to UIM coverage under the Erie policy, as an occupant and user of a non-owned auto.

WHEREFORE, for the reasons set forth above, James Skylar Cooper requests that the Court deny Erie's Motion, grant his Motion and declare that he is entitled to the UIM coverage provided by the Erie policy both for his use of an owned auto and for his occupancy and use of a non-owned auto.

---

[5] The form indicates that the Pison representative selected $1 million in coverage. *Id.* Due to the fact that Erie chose to not provide a multi vehicle discount, the UIM coverages now stack. *See* Syl. Pt. 4, *Miller v. Lemon*, 194 W.Va. 129, 129, 459 S.E.2d 406, 406 (1995).

**JAMES SKYLAR COOPER,**

**Defendant and Counterclaimant,**

**By Counsel:**

/ss/ *R. Chad Duffield*
ROBERT A. CAMPBELL (W. Va. State Bar No. 6052)
R. CHAD DUFFIELD (W. Va. State Bar No. 9583)
JENNIFER D. ROUSH (W.Va. State Bar No. 11165)
FARMER CLINE & CAMPBELL, PLLC
746 Myrtle Road (25314)
Post Office Box 3842
Charleston, WV 25338
(304) 346-5990

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

**ERIE INSURANCE PROPERTY**
**& CASUALTY COMPANY,**

      **Petitioner,**

**v.**                                                  **CIVIL ACTION NO.: 2:20-cv-00321**

**JAMES SKYLAR COOPER,**

      **Respondent.**

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2020, I presented the foregoing "Reply Memorandum to Erie Property and Casualty Company's Response in Opposition to James Skylar Cooper's Motion for Summary Judgment on Counterclaim for Declaratory Relief" to the Clerk of Court for filing and uploading to the CM/ECF system and I hereby certify that I have served the following CM/ECF participants:

      Matthew J. Perry, Esq.
      James D. Lamp, Esq.
      Lamp Bartram Levy Trautwein & Perry, PLLC
      720 Fourth Avenue
      Post Office Box 2488
      Huntington, WV 25725-2488

      *Counsel for Petitioner*

            */ss/ R. Chad Duffield*
            R. CHAD DUFFIELD
            (W.Va. State Bar No. 9583)