**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

ERIE INSURANCE PROPERTY
& CASUALTY COMPANY,

                Plaintiff,

v.                                        CIVIL ACTION NO.   2:20-cv-00321

JAMES SKYLAR COOPER,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed *Erie Insurance Property and Casualty Company's Motion for Summary Judgment* (Document 14), the *Memorandum of Law in Support of Erie Insurance Property and Casualty Company's Motion for Summary Judgment* (Document 15), *James Skylar Cooper's Response to Erie Insurance Property and Casualty Company's Motion for Summary Judgment* (Document 18), and *Erie Insurance Property and Casualty Company's Reply in Support of Its Motion for Summary Judgment* (Document 20), as well as all attached exhibits.

In addition, the Court has reviewed *James Skylar Cooper's Motion for Summary Judgment on Counterclaim for Declaratory Relief* (Document 16), the *Memorandum of Law in Support of James Skylar Cooper's Motion for Summary Judgment on Counterclaim for Declaratory Relief* (Document 17), *Erie Insurance Property and Casualty Company's Response in Opposition to James Skylar Cooper's Motion for Summary Judgment On Counterclaim for Declaratory Relief* (Document 19), and the *Reply Memorandum to Erie Property and Casualty Company's Response*

*in Opposition to James Skylar Cooper's Motion for Summary Judgment on Counterclaim for Declaratory Relief* (Document 21), as well as all attached exhibits.   For the reasons stated herein, the Court finds that Erie's motion should be denied, and Mr. Cooper's motion should be granted.

## FACTS[1]

The Defendant and Counterclaimant, James Skylar Cooper, worked for Pison Management, performing maintenance at rental properties.   He and a crew of other employees typically met at Pison's office in Cross Lanes, loaded the necessary yard maintenance equipment into a Pison-owned truck and trailer, and travelled to the job sites, usually using both a Pison-owned truck and a vehicle owned by one of the employees.   Pison did not reimburse for mileage for the personal vehicle but did pay employees for travel time to the job sites.

On August 9, 2019, Mr. Cooper helped load the equipment onto the utility trailer, towed by the 2004 Chevrolet Silverado owned by Pison.   A supervisor, Demetrius Elder, drove that truck.   Mr. Cooper rode in a separate vehicle owned and operated by a co-worker, Mr. Huffman. Mr. Huffman followed immediately behind Mr. Elder on the route to the job site so that Mr. Elder could lead them to the correct location, which Mr. Huffman and Mr. Cooper had not previously visited.   Another Pison-owned vehicle travelled at the front of the caravan.   Mr. Cooper's duties would have included assisting in unloading the equipment at the job site, mowing the grass and performing other tasks at the site, re-loading the equipment to return to the Pison office, and unloading the equipment.   While en route, at around 7:46 a.m., a vehicle crossed the center line and struck the trailer being towed by the Silverado, then hit Mr. Huffman's vehicle head-on.   Mr.

---

1  The facts recounted herein are not disputed by the parties.

Cooper suffered serious injuries that resulted in substantial medical bills.   He has not been able to return to work since the accident.   His damages exceeded the negligent driver's liability coverage, as well as certain coverage available through family policies.

Pison purchased insurance from Plaintiff and Counter-Defendant Erie Insurance Property & Casualty Company.   It opted for the maximum available coverage offered on the form supplied by Erie.   The policy provided coverage for the vehicles owned by Pison, including the 2004 Chevy Silverado.   That coverage included both uninsured and underinsured motorist coverage.   The policy also provided coverage for "non-owned autos" operated by employees, limited to liability protection.   The Uninsured/Underinsured Motorists Coverage Endorsement provides coverage for bodily injury and property damage resulting from a car accident involving an under- or un-insured motor vehicle.   The coverage applies to "you or others we protect," including "anyone else, while occupying any owned auto we insure."   (Policy, Un- and Underinsured Endorsement at 1-2) (att'd as Pl.'s Ex. 3, at 21-22.)   An endorsement for West Virginia defines "anyone we protect" to include "anyone else while using an auto we insure with your permission," with certain exceptions.   (Pl.'s Ex. 3 at 9, 24.)

Both parties have submitted motions for summary judgment, which are fully briefed and ripe for ruling.

## STANDARD OF REVIEW

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a)–(c); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477

U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014). A "material fact" is a fact that could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). A "genuine issue" concerning a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013); *News & Observer*, 597 F.3d at 576.

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23. When determining whether summary judgment is appropriate, a court must view all of the factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the nonmoving party. *Hoschar*, 739 F.3d at 169. However, the nonmoving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. "At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action." *Perry v. Kappos*, No.11-1476, 2012 WL 2130908, at *3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249, nor will it make determinations of credibility. *N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis.*, 2008 WL 906334, *3 (S.D. W. Va. Mar. 31, 2008) (Copenhaver, J.) (citing *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir. 1986). If

disputes over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate.  *Anderson*, 477 U.S. at 250.   If, however, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be granted because "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 322–23.

When presented with motions for summary judgment from both parties, courts apply the same standard of review.  *Tastee Treats, Inc. v. U.S. Fid. & Guar. Co.*, 2008 WL 2836701 (S.D. W. Va. July 21, 2008) (Johnston, J.) *aff'd,* 474 F. App'x 101 (4th Cir. 2012).   Courts "must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law," resolving factual disputes and drawing inferences for the nonmoving party as to each motion.  *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks and citations omitted); *see also Monumental Paving & Excavating, Inc. v. Pennsylvania Manufacturers' Ass'n Ins. Co.*, 176 F.3d 794, 797 (4th Cir. 1999).

## DISCUSSION

Mr. Cooper argues that he is entitled to summary judgment on two separate theories.   He contends that underinsured motorist coverage is provided because he was "using" the 2004 Chevy Silverado owned by Pison at the time of the accident.   He argues that the Policy provides underinsured motorist coverage to "anyone we protect," including anyone using a vehicle it insured—and he was "using" both the 2004 Chevy Silverado owned by Pison and the non-owned Huffman auto, which was covered while it was being used by employees in the course of employment.   In addition, he contends that West Virginia law required Erie to make a

commercially reasonable offer of underinsured motorist coverage for non-owned autos it insured with liability protection.   He argues that "because Erie failed to make a commercially reasonable offer and obtain a knowing and intelligent rejection of UIM [underinsured motorist] coverage, Erie is required to provide $1 million in UIM coverage for those autos to which it agreed to provide liability coverage."   (Def.'s Mem. at 19-20.)

Erie argues that it is entitled to summary judgment as to the question of whether Mr. Cooper is entitled to underinsured motorist coverage because Mr. Cooper was not a named insured, was traveling in a non-owned auto, and was not "using" a listed vehicle.   It contends that the Policy does not provide underinsured motorist coverage to non-owned autos and is not legally required to offer such coverage.   Although it concedes that West Virginia law requires that UIM coverage apply to those "using," as opposed to "occupying" a vehicle, it argues that one cannot be "using" a vehicle for purposes of accessing insurance coverage associated with that vehicle while riding in a different vehicle.

### A.  Use of Vehicle

West Virginia law requires that "insurers must provide uninsured motorist coverage, and make available underinsured motorist coverage, for injuries causally connected to the use of the vehicle, and foreseeably identifiable with the normal use of the vehicle."   Syl. Pt. 6, *Keefer v. Ferrell*, 655 S.E.2d 94, 96 (W. Va. 2007) (citing W. Va. Code 33-6-31(c)).   "The term 'uses'...is less restrictive than the term 'occupying.' 'Use' of an insured vehicle implies employing the vehicle for some purpose or object of the user."   Syl. Pt. 3, *Adkins v. Meador*, 494 S.E.2d 915, 916 (W. Va. 1997).   "[W]hether or not an injury arose from the 'use' of a motor vehicle depends upon the factual context of each case."   *Id.* at Syl. Pt. 5.

6

The West Virginia Supreme Court has established the following test regarding "use" of a vehicle:

> When the "use" of a vehicle is in question for insurance purposes due to the separation of an individual from a vehicle at the time of an accident, the court must determine whether there is a causal connection between the motor vehicle and the injury. In making that determination, the court may consider, but is not limited by, the following factors: a) whether the individual was in reasonably close proximity to the insured vehicle at the time of the accident; b) whether the individual was vehicle oriented as opposed to highway or sidewalk oriented; c) whether the individual had relinquished control of the vehicle; and d) whether the individual was engaged in a transaction reasonably related to the use of the vehicle at the time of the accident.

Syl. Pt. 2, *Cleaver v. Big Arm Bar & Grill, Inc.*, 502 S.E.2d 438, 438–39 (W. Va. 1998). "The four factors…are instructive guides for finders of facts to follow in evaluating whether an injury arose from the 'use' of a motor vehicle, and no one factor carries more weight than the others." *Id.* at 443.

In *Cleaver*, a passenger was killed when the vehicle he was riding in hit an intoxicated bar patron who ran in front of the vehicle. The bar patron drove from one bar to another, parked across the road, and caused the accident when he was crossing the road to reach the club. The at-fault pedestrian's homeowner's and umbrella policy paid up to the policy limits. Mr. Cleaver's estate sought additional coverage from the bar patron's car insurance policy, which would have also permitted the estate to access underinsured motorist coverage under his own policy and the policy applicable to the vehicle in which he was a passenger. The West Virginia Supreme Court found that "[u]pon parking his car and exiting the vehicle, [the at-fault pedestrian] had fulfilled the purpose for which he was utilizing his car," such that there was no nexus between the vehicle and

the injury, and he was no longer "engaged in a transaction essential to the vehicle's use" at the time of the accident."  *Id.* at 442.

In *Adkins*, "[a] construction worker was seriously injured when he was struck by a vehicle during the course of his job repairing an interstate highway," and sought underinsured motorist coverage through his employer's insurer.  *Adkins*, 494 S.E. 2d at 917.  He was outside his employer's vehicle placing cones along the highway at the time of the accident.  The court examined cases from other jurisdictions and outlined scenarios in which "motor vehicles are used for tasks beyond transporting the owner or driver," focusing largely on vehicles used for business or commercial purposes, including police cruisers "used for protections, communication, traffic control, or as a mobile office," school buses, garbage trucks "used by workers to collect, haul, and dump garbage," and tractor trailers "used to deliver goods."  *Id.* at 921-22.  Because the lower court had not sufficiently developed the facts surrounding the plaintiff's use of the work truck, the court ultimately remanded.

In *Keefer*, Mr. Keefer was driving a tractor on a state highway in preparation for loading it onto a truck and trailer parked approximately twenty-five feet away in an adjacent driveway when he was hit by an underinsured vehicle.  *Keefer v. Ferrell*, 655 S.E.2d 94, 97 (2007).  He sought coverage under the insurance policy for the truck.  The West Virginia Supreme Court found that he was entitled to coverage, concluding that he was "occupying" the truck "insofar as he was in the process of 'getting on' it when he was struck."  *Id.* at 100 (further noting that "the sole reason Mr. Keefer was driving the tractor, as well as the sole reason for the truck being in the driveway, attached to a trailer, with the trailer's ramps down, was to load the tractor onto the truck.").  The court also applied the *Cleaver* factors to find that he was "using" the truck, explaining that the

8

tractor was in reasonably close proximity to the truck, was oriented toward the truck, and was engaged in the process of loading the tractor onto the trailer attached to the truck such that the injuries were casually connected to the use of the truck.   *Id.* at 101-102.   Because "the intended use of the truck to haul the tractor did not require him to operate the truck during the loading process" the court found the "control" factor inapplicable.   *Id.*   Finally, the court concluded that "it was foreseeable that the tractor would be loaded onto the truck and that injuries might occur during that process," given that the insurance policy covering the truck was a business policy for a farm.   *Id.* at 102.

In this case, Mr. Cooper helped to load the insured truck and attached trailer with work equipment and was in the process of traveling to the job site where he and co-workers would unload and use the equipment.   He travelled with another employee as part of a caravan, directly behind the insured truck, and was following the insured truck for navigation.   At the time of the accident, he had no active engagement with the Chevy Silverado.   He was not riding in it, he was not entering or exiting it, and he was not in the process of loading or unloading it.   Although the Court recognizes the similarities to the *Keefer* case highlighted by Mr. Cooper, that case involved someone driving a tractor a short distance in order to load it.   The court emphasized that he was in the process of loading the tractor when the accident occurred.   Here, Mr. Cooper and the other employees were traveling an hour and a half to another job site.   After arrival, he would have again engaged with the Silverado to unload it.   But during the time he was riding in a separate vehicle to reach the job site, he was not actively "using" the Silverado, and the accident cannot be said to have arisen out of his use of that vehicle.   The *Cleaver* factors are of little relevance without a more substantial connection between the use of the vehicle and the accident.   Therefore, the

Court finds that Mr. Cooper is not entitled to coverage on the basis that he was "using" the Chevy Silverado at the time of the accident.

### B.   UIM Coverage for the Huffman Vehicle

West Virginia law requires that all auto insurance policies "shall provide an option to the insured with appropriately adjusted premiums to pay the insured all sums which he or she is legally entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle up to an amount not less than the limits of bodily injury liability insurance and property damage liability insurance purchased by the insured without set off…"   W. Va. Code § 33-6-31(b).   "In other words, by statute, every insurer issuing or delivering an automobile insurance policy in West Virginia is mandated to offer every insured the option of purchasing underinsured motorist coverage."   *Webb v. Shaffer*, 694 F. Supp. 2d 497, 500 (S.D.W. Va. 2010) (Chambers, J.) (describing the required form).   West Virginia Code Section 33-6-31(d) sets forth the requirements for the form of the offer, specifying that the form "shall specifically inform the named insured of the coverage offered and the rate calculation for the coverage, including, but not limited to, levels and amounts of the coverage available and the number of vehicles which will be subject to the coverage."   W. Va. Code § 33-6-31d(a).   The statute prescribes the methods of offering the coverage to the applicant and states that the applicant's "election or rejection is binding on all persons insured under the policy."   *Id.* at § 33-6-31d(b).

The West Virginia Supreme Court held that the purpose of the prior version of § 33-6-31 "is to provide all insurance buyers with an opportunity to purchase a minimum amount of underinsured motorist coverage."   *Riffle v. State Farm Mut. Auto. Ins. Co.*, 410 S.E.2d 413, 415 (W. Va. 1991).   More broadly, "the preeminent public policy of this state in uninsured or

underinsured motorist cases is that the injured person be *fully compensated* for his or her *damages* not compensated by a negligent tortfeasor, up to the limits of the uninsured or underinsured motorist coverage." *State Auto. Mut. Ins. Co. v. Youler*, 396 S.E.2d 737, 745 (W. Va. 1990) (emphasis in original). "Insurers may incorporate such terms, conditions and exclusions in an automobile insurance policy as may be consistent with the premium charged, so long as any such exclusions do not conflict with the spirit and intent of the uninsured and underinsured motorists statutes." Syl. Pt. 2, *Boniey v. Kuchinski*, 677 S.E.2d 922, 924 (W. Va. 2009) (quoting Syl. Pt. 3, *Deel v. Sweeney,* 383 S.E.2d 92 (W. Va. 1989)). "The uninsured motorist statute, West Virginia Code § 33–6–31 (Supp.1986), is remedial in nature and, therefore, must be construed liberally in order to effect its purpose." *Id.* at Syl. Pt. 3, (quoting Syl. Pt. 7, *Perkins v. Doe,* 350 S.E.2d 711 (W. Va. 1986)).

As an initial matter, the Court finds that the Policy, read as a whole, does not provide UIM coverage for non-owned autos. The declarations sheet states that coverage is provided for the specified vehicles where a premium is shown, and the only premium for non-owned autos is for liability. Premiums for UIM coverage are shown only for the two listed owned vehicles. The policy goes on to define non-owned autos as "autos you do not own, hire, rent or borrow that are used in your business, but only for coverages for which a premium charge is shown. This includes autos owned by…employees…, but only while used in your business or personal affairs." (Policy, Document 14-1 at 8.) The UIM Endorsement specifically limits protection to, *inter alia*, those "occupying any owned auto we insure." (*Id.* at 22.)

Thus, the remaining question is whether West Virginia law required Erie to offer UIM coverage for non-owned autos used in Pison's business, for which Pison paid a premium for

11

liability coverage.   If Erie was "required by statute to offer optional coverage, it is included in the policy by operation of law when the insurer fails to prove an effective offer and a knowing and intelligent rejection by the insured."   Syl. Pt. 4, *Thomas v. McDermitt*, 751 S.E.2d 264, 265 (W. Va. 2013).   There is no dispute as to the material facts on this issue.   Whatever forms Erie utilized, Pison accepted all uninsured and underinsured motorist coverage that was offered.   Erie did not make a commercially reasonable offer (or any offer) for UIM coverage for non-owned autos, and the Huffman vehicle was being used for work purposes such that it was covered by Erie's liability policy at the time of the accident.[2]

The West Virginia Supreme Court has not addressed the question of whether an insurer may offer UIM only as to certain vehicles insured under a policy.   However, the statute and related Information Letter by the Insurance Commissioner contemplate that such coverage applies to all vehicles on a policy.   Section 33-6-31d provides that the rate calculation must include "the number of vehicles which will be subject to the coverage" and that an applicant's election or rejection of UIM "is binding on all persons insured under the policy."   W. Va. Code § 33-6-31d(a)-(b).   Mr. Cooper was not a named insured, but he was included in the policy definition of "anyone we protect" as a person using an "auto we insure," given that the Huffman vehicle was insured as a non-owned vehicle being used by employees in the course of their employment. (Policy at 9.)   Given that language, as well as the public policy underlying West Virginia law requiring that insurers offer the opportunity to purchase underinsured motorist coverage up to the liability limits of the policy, the Court finds that such coverage must be offered as to all vehicles

---

2 The Court has reviewed the affidavits submitted by Erie regarding the offer and explanation of underinsured motorist coverage.   Because those affidavits do not address any offer of such coverage as to the non-owned vehicles insured for liability purposes, they are of little relevance to the legal question presented.

covered by the policy.[3]   "Insurers may incorporate such terms, conditions and exclusions in an automobile insurance policy as may be consistent with the premium charged, so long as any such exclusions do not conflict with the spirit and intent of the uninsured and underinsured motorists statutes."   Syl. Pt. 3, *Deel v. Sweeney*, 383 S.E.2d 92, 92–93 (W. Va. 1989).   Excluding certain vehicles from the offer for UIM coverage is contrary to the spirit and intent of the uninsured and underinsured motorists statutes.   Nothing in West Virginia statutory or common law precedent, related to insurance coverage requirements, suggests that Erie's carve-out excluding UIM coverage for non-owned, insured vehicles is permissible.   Accordingly, the Court finds that Mr. Cooper is entitled to summary judgment as to the question of whether the coverage for employee-owned vehicles used for business purposes must be rolled-up to include UIM coverage.   Erie's motion for summary judgment must therefore be denied.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that *Erie Insurance Property and Casualty Company's Motion for Summary Judgment* (Document 14) be **DENIED** and that *James Skylar Cooper's Motion for Summary Judgment on Counterclaim for Declaratory Relief* (Document 16) be **GRANTED**.   The Court **DECLARES** as follows:

(1) James Skylar Cooper was occupying and/or using a non-owned vehicle – the Dodge Caliber – at the time of the subject incident;

---

3 The West Virginia Supreme Court has held that offering liability coverage on golf carts and ATVs not subject to state registration and licensure laws does not establish an obligation to offer UIM in accordance with § 33-6-31, given that they are not legally classified as "motor vehicles."   *Baez v. Foremost Ins. Co.*, No. 17-0473, 2018 WL 2175900, at *3 (W. Va. May 11, 2018) (unpublished).   The Court's holding herein addresses only motor vehicles that meet the applicable legal classification.

(2) Erie Insurance Property & Casualty Company failed to make a commercially reasonable offer of underinsured motorist coverage as to all insured vehicles to Pison Management, LLC;

(3) Erie Insurance Property & Casualty Company failed to obtain knowing and intelligent waiver of underinsured motorist coverage as to the non-owned autos from Pison Management, LLC;

(4) James Skylar Cooper shall be afforded underinsured motorist coverage under the Erie Insurance Property & Casualty Company Policy issued to Pison Management up to the $1 million policy limit.

The Court **DIRECTS** the Clerk to send a certified copy of this Order to counsel of record and to any unrepresented party.

ENTER:    January 28, 2021

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

14